## The Oil Creek and Allegheny River Railroad Co. *versus* The Pennsylvania Transportation Co.

1. Where a corporation has entered into a contract which has been fully executed on one part, and nothing remains but for it to pay the consideration money, it will not be allowed to set up that the contract was *ultra vires*.

2. The Oil Creek & Allegheny River Railroad Co. agreed to pay the Pennsylvania Transportation Co., an oil pipe-line, a certain sum per barrel on all oil transported by it, in consideration that the pipe-line would deliver all the oil under its control to the railroad company for transportation; the pipe-line performed its part of the agreement and brought suit to recover the price agreed on: *Held*, that the railroad company could not set up as a defence that the contract was *ultra vires*.

3. Whether the railroad company might rescind the contract for the future, on the ground that it was *ultra vires*, not decided.

4. In this case the court held that there was evidence enough of an alleged agreement to modify an existing contract to justify submitting the question to the jury.

November 21st 1876. Before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS and MERCUR, JJ., absent.

Error to the Court of Common Pleas of *Crawford county*: Of October and November Term 1876, No. 178.

This was an action of debt brought by the Pennsylvania Transportation Company against the Oil Creek & Allegheny River Railroad Company to recover the amount alleged to be due on a contract between the parties. The plaintiff was the owner of pipe-lines in the oil regions of Pennsylvania, connecting the oil regions with several points on the defendant's railroad.

On July 26th 1871, the railroad company, of the first part, and the transportation company, of the second part, entered into an agreement, which, after reciting that the parties desired to co-operate

[Oil Creek & Allegheny R. Railroad Co. *v.* Penna. Trans. Co.]

with each other in transporting oil, and to harmonize their respective interests, provided as follows:—

" 1. That the party of the second part covenants, &c., to run all the oil, in any manner under its control, through its pipes, &c., to the railroad of the party of the first part, to be delivered at the tanks and depots situated upon, or near, said railroad for transportation by said party of the first part, it being understood and agreed that said party of the second part will co-operate with the party of the first part in said transportation of oil, and will use all the means within its power to deliver all the oil it can control to said party of the first part for transportation over its railroad.

" 2. That the party of the first part agrees to pay to said party of the second part on all oil, or its products, carried and transported over the railroad of the party of the first part, to Union, Corry, Irvington, and Oil City, ten cents per barrel, when the rates of freight on oil charged and received by the said party of the first part for transportation are forty-five cents per barrel, or more, and five cents per barrel when the rates of freight on oil charged and received by said party of the first part are twenty cents per barrel. It is expressly understood that the said payments are not to be made on oil carried through pipes now owned by the Empire Transportation Co., or oil moved in yards, or for a distance not exceeding four miles, when the rates do not exceed fifteen cents per barrel. It is further understood and agreed that in case said party of the first part shall reduce its rates below said forty-five cents per barrel that the said sum of ten cents per barrel to be paid to said party of the second part, as before provided, shall be reduced proportionately to such reduction on the rates charged on said railroad.

" 3. That the party of the second part covenants, &c., that it will not construct, lay, use, lease, or operate any line or lines of pipe which may be parallel with the railroad of the party of the first part, or which may connect with any other railroad or railroads, pipe or pipes, or which may compete with the said party of the first part in the business of transporting oil by river, or rail, or otherwise."

It was further agreed therein that the contract should continue in force for twenty-five years, and that statements should be rendered and payments made under it about the middle of each month for the preceding month.

It appeared from the evidence that when freights fell *below* twenty cents it was understood that the transportation company was not to receive any payment upon the oil transported by the railroad company.

Both parties worked under this contract and monthly statements were made regularly under it till September 1872. Before that time freights were falling below twenty cents, so that the transportation company was not entitled to receive any payment under the contract for oil transported. On August 9th of that year the board

2 NORRIS—11

of directors of the railroad company appointed a committee with power to arrange with the transportation company "for a modification of the contract by which a uniform rate of five cents per barrel on all oil carried shall be adopted in lieu of all existing arrangements."

The communication of this resolution of the board of directors of the railroad company was made to the transportation company at a directors' meeting held on September 9th 1872, by two of the directors of the railroad company, either by a copy of the resolution or by the original; the evidence did not clearly show which. At this meeting of the transportation company's board a resolution was passed "that this company consents to the modification suggested by the Oil Creek and Allegheny River Railroad Co. of the contract between said company for pipeage on oil, and that Henry Harley, W. H. Kemble and G. K. Anderson are hereby appointed a committee on part of this company to carry the modification or change of contract into effect, viz. : instead of the present rate of pipeage, the said Oil Creek and Allegheny River Railroad Co. to pay to this company five (5) cents per barrel on each and every barrel of petroleum oil or its products which may be transported on said railroad."

There was no evidence that the committees appointed by the respective boards ever met together to make a formal settlement of the modification, or that it was ever formally reduced to writing and signed by the representatives of the companies.

W. S. Lane, one of the plaintiff's witnesses, testified as follows :—

" I knew the matter of modification was being discussed. I was one of the counsel at that time, and previous, for company defendant. Mr. Gay told me a meeting of pipe company was to be held, to take action on resolutions of railway company of August 9th. Gay gave me railway company's duplicate of contract of '71, and instructed me, when pipe company had taken action in modification, to endorse it on contract. Was in pipe board also, elected for railway interests. Had personal knowledge that the resolution was accepted by both companies. Attended meeting of board of directors of pipe company in Philadelphia, when modification was presented and adopted. On *same* day of meeting made endorsement on contract of the resolution, according to instructions of Gay, which contract, as endorsed, I have never seen from that day to this."

The witness was shown a copy of the endorsement on the contract and said : " The copy is substantially correct."

Cross-examination.. " I knew of the action of modification by railway company. Gay gave me instructions to endorse resolution of modification on original contract. I gave contract with endorsement to Gay, because I received it of him ; because he was at the office of railway company, which was a proper place to deposit it."

Direct examination. " Gay officiated for some time after I gave him the contract."

[Oil Creek & Allegheny R. Railroad Co. *v.* Penna. Trans. Co.]

The endorsement was as follows :—

" By agreement of the parties to the foregoing contract, and by authority of the board of directors of the O. C. & A. R. Railroad Co., and by authority of the board of directors of the Pennsylvania Transportation Company, the foregoing contract is changed and modified in regard to the rates of pipeage, as follows, viz. : That in lieu of the rates of pipeage within mentioned the O. C. & A. R. Railroad Co. shall pay to the Pennsylvania Transportation Company five cents per barrel on each and every barrel of petroleum, or its products, which may be transported on the said railroad of the O. C. & A. R. Railroad Co.   This to take effect on and after the 1st day of August 1872, and continue for and during the balance of the foregoing contract."

There was evidence that the modification of the contract had been virtually agreed upon between the presidents of the two companies before these meetings of the respective boards were held.

The statement of oil transported in August 1872, made out on the new basis, was paid on September 17th 1872, by the railroad company.   In subsequent months the latter company refused to settle on the new basis, and the transportation company accepted payment according to the terms of the original contract, under protest.

Monthly payments were thus made under the terms of the original contract until February 1874, when the defendant became pecuniarily unable to pay.   In July 1874 it went into the hands of a receiver in which condition it was when this suit was brought.   This action was brought to recover an additional amount alleged to be due under the terms of the modified contract.

At the trial, before Lowrie, P. J., the defendant offered to show that at a meeting of its board, held August 31st 1872, Edward F. Gay resigned his positions as a president and director of the defendant company, and Mr. Bodine resigned his position as director ; also that at a meeting of the defendant's board, held November 15th 1872, at which C. B. Wright, a director of the transportation company, was present, a resolution was passed rescinding the resolution of the board of August 9th 1872 authorizing a modification of the contract with the transportation company.   These offers were refused and a bill sealed for the defendant.   The defendant offered evidence tending to show that the directors of the defendant company (who were at the time of the alleged modification also directors and stockholders of the plaintiff company), had acted at variance with their duties as directors of the defendant company, and in their individual interest as stockholders and directors of the plaintiff company.   This offer was also refused and a bill sealed for the defendant.

The defendant submitted a number of points, among them these :—

1. That the measure of the power of the plaintiff and defendant companies is to be found in their respective charters, and that there

[Oil Creek & Allegheny R. Railroad Co. *v.* Penna. Trans. Co.]

being no legislative authority granting to either the plaintiff or defendant company power to enter into the alleged contract sued on, such contract, even if made, was *ultra vires*, and the plaintiff cannot recover in this action.

The court reserved this point, and after argument, delivered the following opinion upon it :

" The contract here referred to is the one composed of the written agreement of 26th July 1871, the resolution of defendant's directors of 9th August 1871, proposing a change in that agreement and the resolution of the plaintiff's directors of 9th September 1871, accepting that proposal. Not the agreement of 26th July merely, for they did make that, and acted under it, and the defendant still claims to do so. They *did* make it, and there would be a contradiction in now saying they *could not* make it, unless in the two assertions we use the word *make* in a different sense. Not that, but the change made by the resolutions is complained of, and here again it is a contradiction to say they *could not*, for the fact remains they *did it*, and for some time they acted on it. There was, in fact, a change, which was effectual at least to annul the original agreement, and the defendant would now repudiate the new in order to fall back on the old. And the relation intended by the contract was, as a fact, continued until this suit was brought, and now the only dispute is, on what terms, *the new* or *the old*.

" The other portion of this point, whether the making of such a contract was a lawful exercise of corporate functions by the parties, is therefore quite irrelevant. We are now to deal with the actual facts, not with the functions. Men may not lawfully make certain contracts on Sunday. But suppose them made and partly performed, then the function of the law changes. The state does not, in fact, avoid this agreement, and the defendant did not annul it as an unauthorized act of their directors, but took all the benefits it offered then, and now we must judge of the duties of each to each by their acts much more than by their functions. This point is therefore decided in favor of the plaintiff."

6. That a proposed contract is not binding on the party proposing it until acceptance of the other party has been communicated to the party proposing or his agent; and if the jury believe, from all the evidence, that the acceptance by plaintiff company of defendant's proposition embodied in resolution of August 9th 1872, was never communicated to the board of directors of defendant company, or to any member thereof who had been constituted its organs of communication on this subject, then there was no contract consummated, such as is sued on, and their verdict must be for defendant.

" Answer. We affirm this point. But we do not see that any form of communication of the acceptance was agreed on, and the jury must judge whether it was in any way made known, as an

[Oil Creek & Allegheny R. Railroad Co. v. Penna. Trans. Co.]

acceptance, to the defendant; and if they acted upon and according to it, this is evidence of the fact of notice."

10. That under the pleadings in this case, if the jury should find from the evidence that the alleged modified contract was never consummated, then the plaintiff cannot recover at all in this action.

Answer. " We affirm this point."

The other important points raised either the same question as the first point or the incapacity of the same persons to act as directors of both companies in making a contract between them.

The verdict was for the plaintiff in the sum of $197,285. The court, being of opinion with the plaintiff on the reserved points, entered judgment on the verdict. The defendant then took this writ of error; the numerous assignments raised these two questions :—
1. Whether the contract upon which the action was brought was *ultra vires ;* 2. Whether such contract was found by the jury upon sufficient evidence.

*M. Crosby* and *Hampton & Dalzell* for the plaintiff in error.—The resolution of the railroad board provided for a modification on the rates on *all oil*, while that of the transportation board applied to every barrel of petroleum *or its products ;* the offer and acceptance were therefore not identical in terms.

There was no evidence that the two committees ever met to consummate the proposed arrangement. As to a ratification of the new contract by making a payment under it, the voucher put in evidence, was signed by a mere ministerial officer who had no authority to bind the company.

The court erred in refusing evidence that two of the defendant's directors on the committee resigned on August 31st 1872, before the meeting of the transportation board, as this tended to prove that the committee's authority to negotiate with the transportation company was withdrawn before the latter accepted the offer. The evidence of the rescission of the resolution of August 9th, by the railroad board, on November 15th, should have been admitted as tending to prove, not a rescission of the modified contract, but that no modification was ever actually made.

The counsel also argued at length the question of *ultra vires*, and of the incapacity of directors acting for both companies to bind the defendant.

*J. Douglass* and *Pearson Church*, for the defendant in error, also argued fully the question of the power of the defendant below to make the contract, and, further cited Pearsol *v.* Chapin, 8 Wright 9, as showing that the acquiescence in the contract by the defendant below was a complete ratification of it and conclusive upon the railroad company.

[Oil Creek & Allegheny R. Railroad Co. *v.* Penna. Trans. Co.]

Mr. Justice PAXSON delivered the opinion of the court, January 2d 1877.

There are twenty specifications of error in this case. They raise, however, but two substantial questions, viz. : 1. Was the contract upon which the plaintiffs were allowed to recover, *ultra vires ?*  2. Was such contract found by the jury upon sufficient evidence? Neither proposition presents a question of serious difficulty. It does not appear to have occurred to the defendants below that the contract of July 26th 1871 was *ultra vires* until it became apparent that by their subsequent modification of it they had made a bad bargain.   They then attempted to repudiate the modification and fall back upon the original agreement of July 26th.   Yet the illegality, if any existed, was to be found in the original contract; assuming that to be legal, the modification of it was equally so.   We do not think the defendants are in a position to defend upon the ground of the illegality of the contract.   There were mutual covenants and mutual advantages.   The defendants had enjoyed the advantages, such as they were.   To the extent of the demand in this suit the contract was executed, and to say now that it is *ultra vires* comes with an exceedingly bad grace from the defendants. It may be that having shown performance on their part they would have a right to rescind the contract as to future transactions upon the ground of its illegality.   Upon that point we express no opinion. But there is no rule of law which permits them to retain both the benefits and the price.   So far as the contract of these parties may be said to be against public policy and transgressive of their respective charters there is ample remedy.   There is a mode by which the Commonwealth may call a corporation to account where it violates its charter or the rights of the people.   The rights of the Commonwealth are in no manner involved in this suit.

In regard to the second proposition we think there was sufficient evidence to justify the court in submitting to the jury the question of the subsequent modification of the contract of July 26.   Nor can we say that their finding was not warranted by the evidence.   While some of the specifications of error in regard to the admission of evidence are not entirely free from doubt, we perceive no sufficient error to justify us in reversing upon this ground, especially in view of the fact that the defendants acted upon the modification, and settled for one month upon that basis.

Judgment affirmed.