# Wright et al. *versus* The Pipe Line Company et al.

1. Where a corporation, although prohibited by its charter, enters into a contract for the purchase of stock in another corporation, and the contract is executed by the delivery of the stock, it cannot set up as a defence to an action on a promissory note given for the price of the stock and held by a bona fide purchaser, that the contract was ultra vires.

2. Where in such an action the plaintiff has made out his case, without the aid of the illegal transaction, the defendant, who has enjoyed the benefit of the contract cannot set up the defence of ultra vires.

3. The law never sustains the defence of ultra vires out of regard for the defendant; but only where an imperative rule of public policy requires it.

4. Oil Creek & Allegheny River R. Co. *v.* Penna. Transportation Company, 2 Norris 160, followed.

October 3rd 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Venango county:* Of October Term 1882, No. 103.

This was an action of assumpsit by Charles B. Wright and William H. Kemble against the Antwerp Pipe Company, and the Oil City Pipe Company, on a promissory note. Defendants pleaded specially, that the consideration of the note was illegal.

On the trial, before TAYLOR, P. J., the following facts appeared:—The note in suit was the joint obligation of the two corporations defendant, given as part payment for certain shares of the stock of the Pennsylvania Transportation Company, drawn to the order of Henry Harley, agent of said Company, and by him endorsed for value before maturity to the plaintiffs; who knew that the consideration therefor was stock in the Transportation Company. The stock was bought by the defendants in pursuance of a contract between them and Harley, and was delivered to and accepted by them, before the plaintiffs discounted the note.

The Antwerp Pipe Company was incorporated under the Act of July 18th 1863, and its supplement of March 12th 1867, (2 Purd. 1408), and the Oil City Pipe Company was organized under the Act of April 29th 1874 (P. L. 73).

The latter Act provides, inter alia, that it shall not be lawful for a corporation organized under it to use any of its funds in the purchase of stock in any other corporation, or to hold the same except as collateral security for a prior indebtedness.

The defendants in their special plea alleged that the contract for the purchase of the stock "was unauthorized by law or by th

[Wright v. Pipe Line Co.]

terms or provisions of the charters creating the defendant corporations and was in all respects beyond the powers and authority of the officers and directors of the defendant corporations to make, and was unlawful and void ; that Henry Harley, the payee, at the time the note was made and delivered to him, knew that the defendants were corporations organized under the laws of Pennsylvania, and that the note was null and void ; and that the plaintiffs, at the time they negotiated for and received the note, knew that the defendants were corporations, as aforesaid, and that the consideration for the said note, and the contract under which it was given, was unauthorized by law, null and void."

The court instructed the jury that the consideration for the note was illegal, under the Act of 1874, and that the plaintiffs who knew the purpose for which the same was given, were affected with knowledge of the law, and, therefore, could not recover.

Verdict and judgment for defendants ; whereupon the plaintiffs took this writ, assigning for error the above instruction to the jury.

*Wm. S. Lane* and *C. Heydrick*, for plaintiffs in error.—The plaintiffs had no knowledge of the fact that the Oil City Pipe Company was organized under the Act of 1874, and they were therefore bona fide holders of the note and as such are entitled to recover : Chesbrough v. Wright, 41 Barb. 28 ; Metropolitan Bank v. Siber, 33 Leg. Int. 193 ; Williams v. Cheney, 3 Gray 215 ; Haskell v. Jones, 5 Norris 173 ; Wyman v. Fisk, 3 Allen 238 ; Hunter v. Henninger, 12 Nor. 373 ; Hubbard v. Chapin, 2 Id. 328 ; Martin v. Smith, 7 Weekly Notes 32.

The defendants cannot escape liability by setting up that their own obligation grew out of an illegal transaction. "The test whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case :" Swan v. Scott, 11 S. & R. 164 ; Thomas v. Brady, 10 Barr 170 ; Bly v. Second National Bank, 29 P. F. S. 453. In the present suit the plaintiffs rely solely on the note, and require no aid from the contract. Where a contract has been executed, as in this instance, even if illegal, a note given in pursuance thereof, as for the price of a thing sold, can be enforced : Hipple v. Rice, 4 Cas. 406 ; Lestapies v. Ingraham, 5 Barr 71 ; Ex parte Bulmer, 13 Ves. 316.

*Osmer, Dale & Freeman,* for defendants in error.—A corporation cannot become a stockholder in another corporation unless by authority express or implied in its charter : Franklin Company v. Lewistown Savings Bank, 68 Me. 43 ; Berry v.

[Wright *v.* Pipe Line Co.]

Yates, 24 Barb. 199; Mechanics', &c. Bank *v.* Meridian Agency Co., 24 Conn. 159; In re Barneds Banking Co., L. R. 3 Ch. Ap. page 112; Joint Discount Co. *v.* Brown, L. R. 8 Eq. Case 380; Talmage *v.* Pell, 7 N. Y. 328; Penn'a R. R. Co. *v.* Canal Commissioners, 21 Pa. St. 9; Green's Brice's Ultra Vires, 2d ed. 91, note (b); Pierce on Rail Roads, 505-6, and authorities there cited.

The Act under which the Oil City Pipe Company was chartered expressly prohibits the use of its funds for such purpose: Act April 29th 1874, § 12; Mutual Benefit Insurance Co. *v.* Bales, 92 Pa. St. 352. The contract by the defendants for the purchase of the stock was ultra vires and cannot be made valid, even by the consent of all the stockholders, nor can it by partial performance become the foundation of a right of action: National Trust Company *v.* Miller, 33 N. J. Eq. 155; East Anglian Ry. Co. *v.* Eastern Counties Ry. Co., 7 Eng. L. & Eq. 505; Ashburry Ry. Carriage & Iron Co. *v.* Riche, L. R. 7 House of Lords 653; 14 Eng. Rep. Moaks' Notes 42; Thomas *v.* West Jersey R. R. Co., 9 W. N. C. 65; Hodges *v.* City of Buffalo, 2 Denio 110; McCullough *v.* Moss, 5 Id. 565; Green's Brice's Ultra Vires, 2d Ed. 550 and note (a); Field on Corp. 220, § 199; Barton *v.* Port Jackson, &c. Plank Road Co., 17 Barb. 397.

Mr. Justice PAXSON delivered the opinion of the court, November 20th 1882.

It is conceded that the plaintiffs are holders for value of the note in controversy, and that they are not affected with notice of any fraud on the part of Harley, the payee. It was alleged, however, that the consideration of the note was illegal, and that the plaintiffs knew, or were affected with notice of this fact.

The note is the joint note of the Antwerp Pipe Company and the Oil City Pipe Company, and was given in part payment of eighteen thousand three hundred and sixty shares of the stock of the Pennsylvania Transportation Company. The Oil City Pipe Company was organized under the provisions of the Act of 29th April 1874, and under that Act it is provided that it should not be lawful for any corporation organized under it to use any of its funds in the purchase of stock in any other corporation, or to hold the same, except as collateral security for a prior indebtedness. The court below instructed the jury that the consideration of the note being unlawful, the plaintiffs could not recover. This ruling is the only material error assigned.

The note contained upon its face no evidence of illegality, and was issued by corporations having ample power to make and issue commercial paper. The contract claimed to be ille-

gal had been fully executed, and the stock delivered. If the Oil City Pipe Line Company exceeded its corporate powers in the purchase of this stock, can it now repudiate its note in the hands of a holder for value upon the ground that the transaction out of which it grew was ultra vires ? The law never sustains a defence of this nature out of regard for a defendant ; it does so only where an imperative rule of public policy requires it. The instances are rare in which a corporation or individual has been permitted to set up its own wrong in order to retain both the property and its price. The defendant corporations have obtained the stock which they now allege they had no right to buy, and propose to retain it without payment. It would be difficult to imagine a defence with less merit, and the law would be exceedingly impotent were it to allow it . to succeed. The very point was decided in the Oil Creek and Allegheny River Railroad Company *v.* The Pennsylvania Transportation Company, 2 Norris 160, where it was held that where a corporation has entered into a contract which has been fully executed on one part, and nothing remains but for it to pay the consideration money, it will not be allowed to set up that the contract is ultra vires. This judgment was approved by all the members of the court who heard the argument, and was but declaratory of the law as ruled in a number of earlier cases. In Swan *v.* Scott, 11 S. & R. 164, it was said by Justice Duncan : " The test whether a demand connected with an illegal transaction is capable of being enforced at law is, whether the plaintiff requires the aid of the illegal transaction to establish his case." The converse of this proposition is equally true : that where the plaintiff has made out his case without calling the illegal transaction to his aid, the defendant who has enjoyed its benefits cannot set up the defence of ultra vires. In Northampton County's Appeal, 6 Casey 305, it was said by Porter, J.: " A man who has enjoyed a privilege has no right to say that because he ought not to have enjoyed it he will not pay for it. However unlawful the act, it would be unsound policy to give him this immunity." To the same point are the remarks of Chief Justice Gibson in Lestapies *v.* Ingraham, 5 Barr at page 81 : " True it is that an illegal contract will not be executed ; but when it has been executed by the parties themselves, and the illegal object of it has been accomplished, the money or thing which was the price of it may be a legal consideration between the parties for a promise, express or implied, and the court will not unravel the transaction to discover its origin." In Hipple *v.* Rice, 4 Casey 406, it was held, that where lots in a town were disposed of by lottery, each purchaser of a ticket being entitled to a lot of equal size and value, to be determined by the drawing, and the owner of the

[Wright *v.* Pipe Line Co.]

land after the drawing of the lottery made a deed to the grantee in which the making of the lottery, the purchase of the ticket by the grantee and the drawing of the number, were recited, and in which same deed the grantor reserved a ground-rent of one dollar per year, a subsequent holder of the title of the grantee could not set up the lottery as a defence to the payment of the ground rent. In Bly *v.* Second National Bank of Titusville an indorsee upon a note discounted by the bank defended upon the ground that the loan was in contravention of the 29th section of the Act of Congress of June 3d 1864, commonly called the National Bank Act, which provides that : " The actual liabilities to any association, of any person or of any company, corporation or firm, for money borrowed . . . . shall at no time exceed one-tenth part of the amount of the capital stock of such association actually paid in." The court below, TRUNKEY, J., in an opinion which was adopted by this court, held the defence insufficient, and said : " The plaintiff needs no aid from the original transaction to make out his case. Garfield is no party to the note. The defendant attempts its defeat, not by showing anything done at the time it was given, but because of the turpitude of the borrower and lender when Garfield borrowed money of the bank in excess of the amount the latter was permitted to loan to one person."

When the plaintiffs offered the note in evidence they had a perfect prima facie case and did not need the aid of any illegal transaction to entitle them to a verdict. They required no aid from the contract for the sale of the stock. That, as before observed, had been fully executed, and was a matter with which the plaintiffs had nothing whatever to do.

After the plaintiffs had made out their case the defendants set up their want of corporate power to buy the stock, by way of defence. This with the stock transferred to them and unpaid for. The effect of this defence, if successful, would be to punish innocent parties who had no connection with the illegal transaction for the wrongful act of the defendant corporations.

It may be that as between the original parties the defendants could have rescinded the contract and declined to receive the stock. But they executed it; they accepted the stock and gave their note in payment, for which note the plaintiffs paid value in good faith. The defence of ultra vires by a corporation comes with a better grace if made before it has discovered that it has made a bad bargain.

If, as the defendants allege, they have violated their charter, it is a matter that is within the cognizance of the attorney general.

Judgment reversed and a venire facias
de novo awarded.