WEBER et al. v. SPOKANE NAT. BANK et al.

(Circuit Court of Appeals, Ninth Circuit. October 23, 1894.)

No. 156.

1. NATIONAL BANKS—AMOUNT OF INDEBTEDNESS—REV. ST. § 5202.

Under Rev. St. U. S. § 5202, providing that no national bank shall "be indebted or in any way liable to an amount exceeding the amount of its capital stock * * * paid in * * * except on" circulation, deposits, special funds, or declared dividends, a national bank is prohibited from contracting debts or liabilities, other than those within the four classes named, except to the extent of its paid-up, unimpaired capital stock; but, to that extent, there is an implied authority to become indebted upon any contract within the scope of its powers, no matter what may be the amount of its debt or liability upon demands within such four classes.

2. SAME—VALIDITY OF DEBT CONTRACTED IN VIOLATION OF STATUTE.

An indebtedness which a national bank incurs in the exercise of any of its authorized powers, and for which it has received and retains the consideration, is not void from the fact that the amount of the debt surpasses the limit prescribed by Rev. St. U. S. § 5202, or is even incurred in violation of the positive prohibition of the law in that regard.

In Error to the Circuit Court of the United States for the Eastern Division of the District of Washington.

Action at law by C. F. Weber and others against the Spokane National Bank and its receiver, upon promissory notes. Judgment for defendants. 50 Fed. 735. Plaintiffs bring error.

George M. Forster, for plaintiffs in error.

F. T. Post, for defendants in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The plaintiffs in error brought an action against the Spokane National Bank and its receiver, upon three promissory notes which had been given in payment for bank furniture and fixtures supplied by the plaintiffs for the bank building occupied by the defendant bank. The receiver pleaded as a special defense that at the time of the making of the notes, and the sale of the furniture in consideration for which they were given, the bank had already incurred indebtedness and had become liable for amounts aggregating a sum much greater than the amount of its paid-up capital stock, so that, by virtue of section 5202 of the Revised Statutes, it was prohibited from incurring the indebtedness sued upon. The case was tried by the court and a jury, and upon the conclusion of the evidence the court instructed the jury to return a verdict for the defendants, upon the ground that, under the facts disclosed in support of the special defense so pleaded, the plaintiffs could not recover. The evidence sustaining the special defense was that at the time the notes were given the total liabilities of the bank, of whatsoever description, were $516,000, and the capital stock paid in was $100,000. The plaintiffs' assignments of error bring under review the construction given by the circuit court to section 5202, above referred to. That section provides as follows:

"No association shall at any time be indebted, or in any way liable, to an amount exceeding the amount of its capital stock at such time actually paid in and remaining undiminished by losses or otherwise, except on demands of the nature following: First, notes of circulation; second, moneys deposited with or collected by the association; third, bills of exchange or drafts drawn against money actually on deposit to the credit of the association, or due thereto; fourth, liabilities to the stock holders of the association for dividends and reserved profits."

The bank was shown to be indebted to an amount five times its capital stock. There was no evidence of the nature of its liability, but assuming, as we properly may, that its whole indebtedness was in the direction of the exceptions mentioned in the statute, the question arises whether the statute, while declaring that a national bank shall not incur debt to an amount exceeding its paid-up, unimpaired capital stock, otherwise than in the line of the four exceptions named, by implication grants the permission to incur indebtedness or liability to the limit so named upon transactions other than those indicated in the exceptions referred to. In other words, when a bank has notes of circulation, deposits, special funds subject to draft, or funds for the payment of declared dividends to stockholders, which, either alone or in the aggregate, equal its paid-up capital stock, is it prohibited from incurring a debt such as that sued upon in this action? We are of the opinion that such is not the true meaning of the statute. A national bank is a body corporate, with power to make contracts, to sue and be sued, and to exercise all such incidental powers as shall be necessary to carry on the business of banking. But, while it has the power to enter into contracts and incur debts, a limitation is placed upon the extent of the indebtedness for which it may become liable. The purpose of this limitation may be conceded to be the protection of the depositors and others dealing with the bank. The inquiry is, how far does the protection extend? The question is one purely of interpretation of the language of the statute. What is the meaning of the words used? Taken in their ordinary sense and import, we take them to mean that a national banking association is prohibited from contracting debts or liabilities other than those within the four classes named, except to the extent of its paid-up, unimpaired capital stock, and that to that extent there is an implied authority to become indebted upon any contract or transaction which lies within the scope of its powers, no matter what may be the amount of its debt or liability upon its deposits, its notes of circulation, its special funds subject to draft, or its declared, but unpaid, dividends. We are not warranted in giving the words a meaning other than that of their plain import, from the consideration that if so construed the limitation may afford inferior protection to depositors. To hold as contended by defendants in error would be to deprive a national bank of all power to incur an indebtedness such as that sued upon, practically from the moment it had begun business. Take the case of the bank in question. Its capital stock paid up was $100,000. It was authorized to maintain a circulation on notes to the amount of $90,000. If it received that amount in notes, then, as soon as it should have received as much as $10,000 in deposits, it would have been deprived of its power

to contract for the furnishing of its banking office, for the erection of its banking building, for the purchase of the real estate upon which the same is erected, for the payments of its employés' salaries, or for the furtherance of any of its ordinary business, save and except that portion of the banking business which is covered by the four exceptions referred to. If congress had intended the protection which is contended for on behalf of defendants in error, it would seem that its purpose so to do would have been made manifest, and the protection would have been made certain. As it is, even if we adopt the construction contended for, a national bank has it in its power to render the protection largely nugatory without in any way violating the prohibition. Thus, the bank in question was authorized to limit its notes in circulation to one-fourth of its paid-up capital stock. Upon receiving its notes of circulation to that amount, and before receiving deposits or doing any banking business, it could have incurred general indebtedness to the full amount of its capital stock, and thereafter could have received deposits in an unlimited amount. The depositors, in such case, would have the protection, not of the full amount of the paid-up capital stock, but simply such portion thereof as was protected by the deposit of bonds with the treasurer of the United States, upon which its notes of circulation were issued. This section of the statutes was incidentally construed in the circuit court of the district of Vermont, and the same conclusion was there reached concerning its interpretation. Eastern Tp. Bank v. National Bank, 22 Fed. 186.

A second question, and the one which was principally discussed upon the argument, concerns the effect of the statute upon the debt which is contracted in violation of its prohibition. The statute is directed to the banking association, and prohibits it from incurring the proscribed liability. It does not, in terms, declare void the debt or liability so incurred; and no penalty is denounced against the bank for violation of the prohibition, unless it be the general penalty provided for in section 5239, where it is declared that if any of the prohibitions of the law governing national banks are violated, with the knowledge of the directors, the charter of the bank shall be forfeited. Is the inhibited debt void, and may the banking association retain the property which it acquires under such circumstances, and deny its liability for the stipulated consideration? We find no reported decision of this question, but certain other sections of the statutes defining the powers of national banking associations, and prohibiting them from doing certain specified acts, have been the subject of adjudication. The tendency of all the decisions has been to refer to the general government the power to deal with all violations of the act, and to hold that acts done without the scope of the prescribed powers of the bank, or in violation of the express terms of the statute for their guidance, are not void, but are voidable only. Thus section 5136, by implication, prohibits a national bank from loaning money upon real estate security; yet it is held that a mortgage taken upon real estate to secure a contemporaneous loan or future advances is not void, but merely voidable, at the instance of the government. Bank v. Matthews, 98 U. S. 621; Bank v. Whitney,

103 U. S. 99. Section 5201 expressly prohibits a loan by a national bank upon the pledge of its own shares; but it has been held that, if the prohibition could be urged against the validity of a transaction by any one except the government, it could only be done before the contract was executed, and while the security remained pledged, and that the illegality of the transaction would not render the bank liable to the pledger for the payment to him of the money realized upon the sale of the security. Bank v. Stewart, 107 U. S. 676, 2 Sup. Ct. 778. Section 5200 provides that no bank shall loan to one person or firm an amount to exceed one-tenth of its actually-paid capital stock; but it is held that, if a greater sum is loaned than is allowed by this section, that fact may not be set up in defense to an action for recovery of the money so loaned (Gold Min. Co. v. National Bank, 96 U. S. 640), and that the statute was intended as a rule for the government of the bank, and did not render the loan void (O'Hare v. Bank, 77 Pa. St. 96; Pangborn v. Westlake, 36 Iowa, 546). We think the reasoning upon which these conclusions are reached is applicable to the case before the court. We hold, therefore, that an indebtedness which a national bank incurs in the exercise of any of its authorized powers, and for which it has received and retains the consideration, is not void from the fact that the amount of the debt surpasses the limit prescribed by the statute, or is even incurred in violation of the positive prohibition of the law in that regard.

The defendants in error rely upon decisions of the supreme court in which it has been held that municipal bonds issued beyond the limit prescribed by the legislature are void. Crampton v. Zabriskie, 101 U. S. 601; Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315; Daviess Co. v. Dickinson, 117 U. S. 657, 6 Sup. Ct. 897; Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820. Those decisions rest upon principles entirely distinct from those involved in the case at bar. The amount of the authorized issue of municipal bonds is always ascertainable by a reference to public records equally accessible to all; and the officers of the municipal corporation are public servants, whose unauthorized acts do not bind the public. In the case of a national bank, no such public record is provided, and no method is pointed out by means of which the status of the bank's indebtedness can be ascertained. The judgment is reversed, at the cost of the defendants in error, and the cause is remanded for a new trial.