## Murrow, Assignee, v. Overseas Veterans Association

*John E. Cupp*, for plaintiff; *Humes & Baird*, for defendant.

LARRABEE, J., May 31, 1933.—This case comes before the court on argument on a stipulation in the nature of a case stated.

It appears from the record that on May 1, 1930, the president and secretary of the defendant association executed and delivered to Joseph H. Gardner a

bond and mortgage in the name of said defendant, conditioned for the payment of the just sum of $5,200 to the said mortgagee in 1 year from date, together with interest thereon, and providing for the usual forfeitures and procedure in event of default of payment of principal or interest. The mortgage covered certain real estate of the defendant situated in the City of Williamsport. It further appears that the said Joseph H. Gardner, on December 29, 1931, assigned the bond and mortgage to H. C. Murrow, the plaintiff herein, who avers that defendant has made default in the payment of the principal, and that said sum is due, together with interest, costs, and attorney's commission of 10 percent.

A writ of sci. fa. sur mortgage was duly issued and served on the defendant on February 13, 1931.

In reply the defendant sets up that the bond and mortgage were not executed by the three trustees of defendant, as required by its bylaws, and therefore are not its valid obligations; that at the time this mortgage was made, the mortgagee was an honorary member of defendant corporation and thereby had constructive notice of the said bylaws; and further that he is a member of defendant corporation within the meaning of the Act of May 12, 1925, P. L. 615.

It appears from the record that the Court of Common Pleas of Lycoming County did, on March 14, 1927, approve and order the incorporation of the said Overseas Veterans Association as a corporation of the first class.

The parties agreed to submit the question involved to the court by a stipulation in the nature of a case stated, which recited, inter alia, that the said Joseph H. Gardner is an honorary member of said association, having been initiated as such at a meeting of the association on August 6, 1929; that the bond and mortgage involved were duly executed and delivered by the president and secretary of said Overseas Veterans Association to said Joseph H. Gardner on May 1, 1930, at which date the said Gardner continued to be an honorary member of said association; and that the said bond and mortgage were not executed by the three trustees of said defendant association. The stipulation further set forth that the bylaws, adopted by said defendant corporation on April 27, 1927, contain the following provision, to wit:

"Article VIII—Trustees.

"Section Four—They shall have entire charge and control of the association home and shall employ, discharge, and control all employes of the association, except canteen employes and doorman, but said trustees shall not enter into contracts involving the expenditure of more than $100 without the consent of the association being first had by resolution.

"Section Five—They shall approve all bills and sign all papers of legal character pertaining to the Overseas Association."

Attached to the stipulation is a copy of the minutes of the meeting of the board of governors of defendant association, held on April 29, 1930, at which meeting action was taken relating to the borrowing of a sum of money under bond and mortgage to be given by the association, and the following resolution was unanimously adopted, to wit:

"That full authority be granted to M. B. Gray, president, and C. A. Gnau, secretary-treasurer of the association, to secure a mortgage on the association home, 236 East Third Street, Williamsport, Pennsylvania, for an amount not to exceed $5,000. The amount that the building shall be mortgaged for to be left to the discretion of President Gray and Treasurer C. A. Gnau, but cannot exceed $5,000. This mortgage loan to be secured through any local bank or legitimate mortgage company."

It also appears that another special meeting of the board of governors of the association was held, at which the president "was authorized to get the money from anyone who would make the loan, inasmuch as he had been unable to secure the money from any bank or legitimate mortgage company".

It was contended by plaintiff that the mortgage had been duly executed and delivered by defendant to plaintiff's assignor, Joseph H. Gardner, for a real consideration, and defendant had received the amount of the just sum set forth in said bond and mortgage for its use and benefit, and that default had been made in the payment of said principal sum when due, together with interest thereon. Defendant replied that at the time the bond and mortgage were executed and delivered by its president and secretary to the said mortgagee, he was an honorary member of the said association and therefore had constructive knowledge of the provisions of the bylaws and was bound to know that the bond and mortgage should have been executed and delivered by the three trustees of the defendant association instead of by its president and secretary, as was actually done. In reply the plaintiff sets up that the said Joseph H. Gardner, mortgagee, was not an active member but merely an honorary member of the Veterans Overseas Association, and that his relation to said association was merely that of a courtesy member; therefore, he was not bound to have constructive notice of the provisions of the bylaws by virtue of said honorary membership.

Plaintiff further argued that the defendant association, having executed and delivered said bond and mortgage to Joseph H. Gardner in consideration of a loan in the sum of $5,200 and having enjoyed the use and benefit of said money, was estopped to deny its liability under said instrument. Defendant further relied on the Act of May 12, 1925, P. L. 615, which provides as follows, to wit:

"Section 1. Be it enacted, &c., That the by-laws of any corporation organized or doing business within the Commonwealth shall operate merely as regulations among members or stockholders of the corporation and shall have no effect upon contracts or other dealings with other persons unless such persons shall have actual knowledge of such by-laws.

"Section 2. Any note, mortgage, evidence of indebtedness, contract, or other instrument of writing, or any assignment or endorsement thereof, executed or entered into between any corporation organized or doing business within the Commonwealth and any other person, copartnership, association, or corporation, when signed by the president or vice-president and secretary or treasurer of such corporation, shall be held to have been properly executed for and in behalf of such corporation."

A reading of the charter of the organization discloses that it is a corporation of the first class, that no stock was issued to its members, either active or honorary, and that it was formed largely for social purposes and for continuing the associations of local members of the A. E. F. in the late World War; and that its meetings were almost entirely for the purpose of social intercourse by ex-service men.

Counsel for the parties were unable to cite any statutory authority or decisions by the appellate courts of Pennsylvania, or elsewhere, as to the status of an honorary member in an organization of this nature or as to his duties and liabilities by virtue of such honorary membership. Furthermore, the court, after an exhaustive search, has not been able to find any decisions of our Pennsylvania courts, or those of any other jurisdiction, bearing on the question of the rights, duties and liabilities of a so-called "honorary member" in a corporation of the first class.

This controversy raises two points for our consideration:

First, is the status of an honorary member of a Pennsylvania corporation of the first class such that the member is bound to have constructive knowledge of the provisions of the bylaws of the organization?

Second, are the bond and mortgage executed and delivered by the president and secretary of this corporation, instead of by three trustees, as provided for in the bylaws, where the contract has been executed by the mortgagee and the amount of the consideration paid over to the mortgagor, valid and existing obligations of the defendant rendering it liable for payment of the just sum stated in the bond and mortgage?

In the absence of any provision in the charter or bylaws of defendant corporation to the effect that an honorary member by virtue of such membership enjoys the same rights and is subject to the same duties and obligations as a bona fide active member of such corporation, and in the absence of any statutory provision defining his duties and obligations, the court is of the opinion that one, by accepting an honorary membership in such a corporation, which implies nothing more than the extending of the courtesy of the social privileges of the clubhouse, does not thereby assume the same duties and obligations as those of an active member and is not charged with having constructive notice of the provisions of the bylaws.

The said stipulation recites that the bond and mortgage were duly executed and delivered in the name of the defendant association by its president and secretary to Joseph H. Gardner, mortgagee, and therefore, on the face of this admission, the court may properly assume that this was done by the said officers only in consideration of receiving the amount of money stated as the just sum in said bond and mortgage and that defendant did receive and enjoy the benefit of said consideration.

There is nothing in the record or stipulation which shows that said mortgagee had actual notice of the provision of the bylaws that the three trustees of defendant association "shall approve all bills and sign all papers of legal character pertaining to the Overseas Association."

From a reading of the minutes of the special meetings of the board of governors referred to, it may fairly be inferred that the board of governors there assembled, which body comprised the three trustees as well as the general executive officers of the defendant association, expressly waived that provision of the bylaws purporting to vest in the three trustees the sole power and authority to approve all bills and sign all papers of legal character, and instead delegated that authority to the president and secretary. Furthermore, it does not appear that legal counsel was present at these special meetings, and we may conclude that those officers present were speaking not as lawyers but were using the language of laymen when they stated in their resolution "that full authority be granted to M. B. Gray, president, and C. A. Gnau, secretary-treasurer of the association, to secure a mortgage on the association home, 236 East Third Street, Williamsport, Pennsylvania, for an amount not to exceed $5,000." And these officers must have intended that the president and secretary should act for the association not only in finding a bank or individual to lend the money but were to proceed to effect such loan and execute the necessary legal instruments in behalf of the corporation for securing same.

It appears that "on the following Monday" after April 29, 1930, at a special meeting of the said board of governors, the president and secretary reported they had not been able to obtain the said desired loan and the board of governors expressly authorized the president "to get the money from anyone who would make the loan".

The defendant contends that this act of its president and secretary, in executing the said bond and mortgage in the name of the defendant corporation, constitutes an act that is ultra vires, that said documents should have been signed by the three trustees of the association, and therefore that the said bond and mortgage are not binding on the defendant.

However, the court is convinced, after a review of the authorities bearing on this question, that this position of the defendant is untenable, and in support of this conclusion the court refers to the following decisions and authorities:

"It is a rather common error to confuse the terms 'illegality' and 'ultra vires,' terms which represent totally different and distinct ideas. A contract of a corporation may be both ultra vires and illegal, though it by no means follows that because such a contract is ultra vires it is also illegal, nor is illegality a necessary, or perhaps even a usual, characteristic of ultra vires contracts. Whether a contract is illegal or not is determined by its quality, and in this connection it matters little whether it be the contract of a corporation or of an individual; whether it be ultra vires or not is determined from a consideration of the powers expressly conferred upon the corporation by the instrument of its creation, together with those other powers implied in the purposes of its creation and in the powers expressly granted." 7 R. C. L. 673, sec. 677.

The principle is well established in many jurisdictions, including Pennsylvania, that where a contract that is ultra vires by reason of a failure to comply with certain rules and regulations of the corporation has been executed by the other party to the contract and the corporation has received and enjoyed the benefits of the acts rendered by the other party, the corporation may not be allowed to set up the defense of ultra vires.

The defense of ultra vires is looked upon with disfavor by courts of several jurisdictions whenever such defense is presented for the purpose of avoiding an obligation which a corporation has assumed merely in excess of the powers conferred upon it and not in violation of some express prohibition of the statute, and in many of the later cases the rule has been stated that the plea of ultra vires shall not be allowed to prevail, whether such defense is interposed for or against the corporation, when it will not advance justice, but on the contrary will accomplish a legal wrong: 7 R. C. L. 676, sec. 678, and decisions there cited.

It is not contended by defendant that it was prohibited by statute from borrowing money and securing a loan by bond and mortgage covering the real estate of this association, nor that such action is forbidden by its charter.

The Supreme Court of Pennsylvania declared in The Oil Creek and Allegheny River Railroad Co. v. The Pennsylvania Transportation Co., 83 Pa. 160, that where a corporation has entered into a contract that has been fully executed on one part, and nothing remains but for it to pay the consideration money, it would not be allowed to set up that the contract was ultra vires.

And in Scouton v. Stony Brook Lumber Co., 261 Pa. 241, this principle was again reaffirmed by the Supreme Court of Pennsylvania under facts much stronger as to knowledge of the bylaws on the part of the plaintiff than in the instant case. In that case, a director of a corporation had loaned a sum of money to the corporation and received as security for the same the note of the corporation, which was executed in the corporate name by the newly-elected president and secretary of the corporation. However, the note was not signed by the treasurer, as the bylaws specifically required. The evidence offered by the plaintiff, the lender of the sum involved, was to the effect that the treasurer was present, consented to the transaction, and said he would sign the note. This testimony was denied by the treasurer, who testified that the money was loaned

to an individual member of the corporation and not to the defendant corporation. Furthermore, in that case it appears that none of the funds involved passed through the hands of the treasurer, and, as stated in the court's opinion, there was a sharp conflict in the evidence. The jury found that a part of the sum involved had been received by the corporation, and the Supreme Court said (page 246):

"Conceding that the president and secretary were not authorized to execute the note, yet the company got the money, which it cannot retain and repudiate the agency by which it was secured. Upon this question we adopt the following from the opinion of the court below: 'If plaintiff's money was loaned and used for such purpose it is of no consequence that the election of officers was irregular, or that one of them was absent at the time of such loan, or that the treasurer did not execute the note. Such irregularities give way to the principle that a party cannot avail himself of the benefit of his agent's act and repudiate his authority—in the application of which it is held that a corporation which has received the benefit of a note irregularly issued cannot escape liability thereon by showing it was not executed by the proper officers.' "

In this decision the Supreme Court has gone so far as to hold that even though a director of a corporation, who, by virtue of such office, ordinarily would have actual knowledge of the provisions of the bylaws, accepted a note from the corporation for a loan which was not executed by the treasurer, the plaintiff's claim should be upheld on the broad principle that the corporation, having had the benefit of the money loaned, could not set up in defense an irregularity in the execution of the note by the corporation, to wit, that the note should have been signed by the treasurer as provided in its bylaws.

See also opinion in Kendall v. Klapperthal Co., 202 Pa. 596.

We consider it settled that if a director of a corporation of the second class and one of the board in active charge of its affairs is not denied the right to apply such a rule, then with much less force may it be contended that one having but an honorary membership in a corporation of the first class should be denied the right of relying on this principle.

Again in Wright et al. v. The Pipe Line Co. et al., 101 Pa. 204, 207, the Supreme Court said:

"The instances are rare in which a corporation or individual has been permitted to set up its own wrong in order to retain both the property and its price. The defendant corporations have obtained the stock which they now allege they had no right to buy, and propose to retain it without payment. It would be difficult to imagine a defence with less merit, and the law would be exceedingly impotent were it to allow it to succeed. The very point was decided in the Oil Creek and Allegheny River Railroad Company v. The Pennsylvania Transportation Company, 2 Norris 160, where it was held that where a corporation has entered into a contract which has been fully executed on one part, and nothing remains but for it to pay the consideration money, it will not be allowed to set up that the contract is ultra vires. This judgment was approved by all the members of the court who heard the argument, and was but declaratory of the law as ruled in a number of earlier cases. In Swan v. Scott, 11 S. & R. 164, it was said by Justice Duncan: 'The test whether a demand connected with an illegal transaction is capable of being enforced at law is, whether the plaintiff requires the aid of the illegal transaction to establish his case.' The converse of this proposition is equally true: that where the plaintiff has made out his case without calling the illegal transaction to his aid, the defendant who has enjoyed its benefits cannot set up the defence of ultra vires."

And in Northampton County's Appeal, 30 Pa. 305, it was said by the court:

"A man who has enjoyed a privilege has no right to say that, because he ought not to have enjoyed it, he will not pay for it. However unlawful the act, it would be unsound policy to give him this immunity:"

In Lestapies v. Ingraham, 5 Pa. 71, 81, the Supreme Court of Pennsylvania said:

"True it is, that an illegal contract will not be executed; but when it has been executed by the parties themselves, and the illegal object of it has been accomplished, the money or thing which was the price of it may be a legal consideration between the parties, for a promise, express or implied; and the court will not unravel the transaction to discover its origin."

In Presbyterian Board v. Gilbee, 212 Pa. 310, a case where the defendant corporation attempted to avail itself of the principle of ultra vires as a defense, where a contract had been entered into and executed in good faith by the other party and the corporation had received the benefit of the performance, the court said:

"Conceding that the directors could act only as a board, and that the trustees were not duly authorized to make delivery, we have only the case of agents exceeding their actual authority. It is repugnant to every sense of justice and fair dealing that a principal shall avail himself of the benefits of an agent's act, and at the same time repudiate his authority. A corporation may not avail itself even of ultra vires as a defense where a contract has been entered into and executed in good faith by the other party and the corporation has received the benefit of the performance: Oil Creek, etc., Railroad Co. v. Penna. Transportation Co., 83 Pa. 160; Boyd v. American Carbon Black Co., 182 Pa. 206." (212 Pa. 314.)

In Penn. Natural Gas Co. v. Cook, 123 Pa. 170, 183, where the corporation set up the defense of a defective execution of its bond, the Supreme Court said:

"The contract was executed. The defendants had availed themselves of the consideration. They had obtained all they needed from the plaintiff, and the objection that the bond was executed without authority of the respective corporations came with an ill grace at such a late hour. There is a long series of cases—some of them very recent, to which I need not refer specifically—that when an agent exceeds his authority, his principal cannot avail himself of the benefit of his act and at the same time repudiate his authority. This principle rests upon the solid foundation of natural justice and common honesty."

And in the later decision of McBride, Admin'x, v. Western Pa. Paper Co., 263 Pa. 345, 350, where the defendant corporation attempted to set up the defense that the contract had been entered into without due authority, the Supreme Court said:

"Defendant also denied liability, averring no action by its board of directors or other officials binding upon it as a corporation and that the contract, even if made, was ultra vires. The answer to both these contentions is the corporation accepted the benefit of the transaction and thereby ratified or adopted the acts of its representatives and, consequently, is estopped from setting up a defense that the contract was entered into without authority, or that it was beyond the power of the corporation to make: 'It is repugnant to every sense of justice and fair dealing that a principal shall avail himself of the benefits of an agent's act, and at the same time repudiate his authority. A corporation may not avail itself even of ultra vires as a defense where a contract has been entered into and executed in good faith by the other party and the corporation has received the benefit of the performance: Oil Creek, Etc., R. R. Co. v. Penna. Transportation Co., 83 Pa. 160; Boyd v. American Carbon Black Co., 182 Pa. 206.' Presbyterian Board v. Gilbee, 212 Pa. 310, 314."

The same principle was also applied in Hartzell v. Ebbvale Mining Co., 239 Pa. 602, and in Pannebaker v. Tuscarora Valley R. R. Co., 219 Pa. 60.

As to the further contention of defendant that in any event the act of the president and secretary, in making this mortgage to Gardner, was ultra vires and illegal because the instructions given by the board of governors authorized a mortgage only in the sum of $5,000, whereas the bond and mortgage was actually executed in the sum of $5,200, the court is convinced that the principles above cited also apply, to wit, that this variance from the amount designated in the said resolution is but an irregularity, of which the defendant association cannot now avail itself. And, as it does not appear there is any denial that the mortgagee paid the full amount of $5,200 consideration, it is assumed this amount was received by the defendant association for its use and benefit. In the case of The Union Trust Company, etc., v. The Mercantile Library Hall Co. et al., 189 Pa. 263, 268, the Supreme Court said:

"But assuming that by legislative language somewhat obscure, the authority to borrow $150,000 additional, was doubtful, the corporation, this mortgagor, will not be heard to raise the question of ultra vires. It assumed to have the authority to mortgage, received the money, and applied it to corporate purposes. 'The law never sustains a defense of this nature out of regard for the defendant:' Wright v. Pipe Line Co., 101 Pa. 204; Reed's App., 122 Pa. 565, Fritts v. Palmer, 132 U. S. 282."

Other cases of like effect, which hold that merely incurring debts in excess of the authorized amount does not make the contract illegal or permit the defense of ultra vires to defeat the claim, are Ossipee Hosiery and Woolen Manufacturing Co. v. Canney, 54 N. H. 295, Citizens Bank, etc., v. Bank of Waddy, etc., 126 Ky. 169, 103 S. W. 249, Weber v. Spokane Nat. Bank, 64 Fed. 208, and Connecticut River Savings-Bank v. Fiske et al., 60 N. H. 363. See L. R. A. 1917A, 778, 779.

And in Thompson on Corporations (1st ed.), sec. 6016, as well as in 10 Cyc., sec. 1156, this same principle is declared, to wit:

"The great mass of judicial authority seems to be to the effect that where a private corporation has entered into a contract in excess of its granted powers, and has received the fruits or benefits of the contract, and an action is brought against it to enforce the obligation on its part, it is estopped from setting up the defense that it had no power to make it." L. R. A. 1917A, 829.

It is readily apparent from the reading of the minutes of the two special meetings of the board of governors of defendant that this is not a case where the president and secretary of a corporation have proceeded on their own initiative and without the knowledge or authority or instructions from the directors of the corporation to execute an obligation in the name of the corporation. On the contrary, it appears that the board of governors expressly authorized the president and secretary to secure such mortgage loan in behalf of the association, which mortgage was to cover the association's real estate. And at another special meeting held a few days later the board expressly authorized the president to obtain the loan from anyone that he could. Therefore, the governing body of officers of this corporation was fully aware that authority had been given for a bond and mortgage to be issued, and in the absence of any proof to the contrary would be cognizant of the fact that the association was to receive the proceeds from the loan for its own use and benefit.

## Decree

And now, to wit, May 31, 1933, in view of the established principles set forth in the above-cited authorities, the court finds that the bond and mortgage, exe-

cuted and delivered by the Overseas Veterans Association by its president and secretary, are valid and existing obligations of said defendant and that it is liable to the plaintiff, H. C. Murrow, assignee of Joseph H. Gardner, mortgagee, in the full amount claimed under said obligations, to wit, $5,152.88, together with interest thereon from February 8, 1932, and costs and attorney's commission of 10 percent; and judgment is hereby directed to be entered in favor of the said plaintiff, H. C. Murrow, against the said Overseas Veterans Association in the said sum of $5,152.88, with interest thereon from said February 8, 1932, together with record costs and 10 percent attorney's commission.

From Harry Alvan Baird, Williamsport, Pa.