## CHEMICAL BANK *v.* CITY BANK OF PORTAGE.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 736. Submitted January 7, 1896. — Decided January 27, 1896.

By authority of the directors of a national bank in Chicago, which had acquired some of its own stock, the individual note of its cashier, secured by a pledge of that stock was, through a broker in Portage, sold to a bank there. The note not being paid at maturity the Portage Bank sued the Chicago Bank in assumpsit, declaring specially on the note, which it alleged was made by the bank in the cashier's name, and also setting out the common counts. The bank set up that the purchase of its own stock was illegal and that money borrowed to pay a debt con-

tracted for that purpose was equally forbidden by Rev. Stat. § 5201. The trial court was requested by the Chicago Bank to rule several propositions of law, and declined to do so. Judgment was then entered for the Portage Bank. The Supreme Court of the State of Illinois held that the Portage Bank was entitled to recover under the common counts, and that it was not necessary to consider whether the trial court had ruled correctly on the propositions of law submitted to it. *Held,* that that court, in rendering such judgment, denied no title, right, privilege, or immunity specially set up or claimed under the laws of the United States, and that the writ of error must be dismissed.

THIS was an action of assumpsit brought by the City Bank of Portage against the Chemical National Bank of Chicago, in the Superior Court of Cook County, Illinois. The declaration contained a special count upon a note signed by C. E. Braden, which it was alleged was made by defendant in that name; and the common counts. The defendant pleaded the general issue and a plea denying the execution of the note described in the special count. A jury was waived and the cause submitted to the court for trial.

Under the practice act of Illinois, where a trial is by the court, either party may " submit to the court written propositions to be held as law in the decision of the case, upon which the court shall write 'refused' or 'held,' as he shall be of opinion is the law, or modify the same, to which either party may except as to other opinions of the court." Rev. Stat. Ill. c. 110, § 42; 2 Starr & Curt. 1808.

Defendant requested the court to hold as law in the decision of the case the eight propositions given in the margin.[1]

---

[1] 1. If the court finds from the evidence that some of the directors of the Chemical National Bank of Chicago were desirous of purchasing shares of the capital stock of said bank for themselves, individually; that in pursuance of such desire they instructed the president of said bank to purchase such an amount of said shares of stock not exceeding $100,000 par value, as might be offered at par, stating to him that they would take the stock so purchased at different times as their money came in; that in pursuance of such instruction the president of said bank caused a broker to purchase fifty shares of said capital stock, and in payment for said stock one Hopkins, assistant cashier of said bank, gave to said broker his individual note for the purchase price of said stock, payable on demand; that thereafter, payment of said note being demanded of said Hopkins, the pres-

Of these the court refused to hold propositions numbered one, two, three, four, six, and eight, and also proposition numbered six " if it appears that the bank, its officers knowing the facts, used the money ;" and defendant excepted. The court held propositions numbered five and seven. The issues were found in favor of plaintiff, and judgment entered on the finding, and, the case having been taken to the Appellate Court for the first district of Illinois, the judgment of the Superior Court was affirmed. 55 Ill. App. 251. And this judgment of the Appellate Court was affirmed by the Supreme Court of the State on appeal. 156 Illinois, 149. Thereupon a writ of error from this court was sued out.

There was evidence tending to show that in 1893 the Chemical National Bank had taken some of its own stock in pay-

ident and cashier of said bank paid said note out of the moneys of said bank, and thereupon it was arranged by and between the president, the cashier, and the assistant cashier, that the cashier, Braden, should execute his individual note for $5000 to a broker; that fifty shares of said stock so purchased should be transferred upon the books of the bank to said Braden, and attached to said note to be given to said broker as collateral security; that said broker should procure said note to be discounted, and that the money realized by discounting said note should be paid into the moneys of the bank to replace the money of the bank used in paying the Hopkins note, and that in pursuance of such arrangement said Braden gave the note in controversy, and the same was discounted and the proceeds were deposited with the moneys of the Chemical National Bank of Chicago, then the court should find that said note was the individual note of said Braden, and not the note of the defendant, and should find the issues in favor of the defendant.

2. If the court believes the testimony given by J. O. Curry in this case to be true and to be a correct statement of the circumstances connected with the execution by Braden of the note sued on, then the court must find the issues joined in favor of the defendant.

3. Although the court may believe the testimony of Braden to be true, yet his testimony with all inferences that may be justifiably drawn therefrom in favor of the plaintiff does not justify a finding in favor of the plaintiff.

4. The fact that the money realized upon the note in suit was received by the Chemical National Bank of Chicago does not make said Chemical National Bank of Chicago liable upon said note; and this is true notwithstanding it was agreed by and between Curry, Braden, and Hopkins that the note should be treated as a note of the Chemical National Bank of Chicago and paid by it.

ment of a debt; that Hopkins, assistant cashier, had given to a firm of brokers his note payable on call, secured by part of this stock as collateral; that the brokers procured the money on the note and paid it to the bank, the assistant cashier not getting any of it; and that after the note had run fifteen days the holders called it in and it was paid out of the moneys of the bank. It was then agreed between Curry, president, Braden, cashier, and Hopkins, assistant cashier, that the bank should raise five thousand dollars through a broker in Minneapolis, by giving a note in Braden's name, payable to the broker and with the stock as collateral, and that, as the bank was to have the money, the note should be the bank's obligation and be paid by it. In carrying out this arrangement the note in suit was given, being signed by Braden in his own name and not as cashier, and made

5. A national banking association is prohibited by law from purchasing shares of its own capital stock unless such purchase shall be necessary to prevent loss upon a debt previously contracted in good faith.

6. The purchase by officers of a national banking association of shares of its own capital stock unless such purchase is necessary to prevent loss upon a debt previously contracted in good faith, cannot be regarded as a transaction of the association itself unless expressly authorized by its board of directors and a note executed by an officer in his own individual name for the purpose of borrowing money to make such a purchase cannot be regarded as the note of the association unless recognized as such by its board of directors and unless the lender parted with his money upon the faith of the liability of the association.

7. There is no evidence in this case legally sufficient to justify a finding that the plaintiff at the time it accepted the note in controversy and advanced money on the same had any knowledge whatever that Braden was not the real principal or that it advanced any money on the note upon the faith of any supposed liability of the defendant upon said note.

8. Although a corporation may be held liable upon a contract that is *ultra vires* or prohibited by law, when such contract has been fully executed by the other party, yet where such contract has been entered into by an officer of the corporation in his own individual name, and the other party, at the time he performed the same on his part, had no knowledge that the same was for the benefit of the corporation and did not part with any money or property on the faith of the liability of the corporation upon the contract, but, on the contrary, executed the contract on his part in reliance solely upon the individual liability of such officer, such other party cannot enforce such contract against the corporation as an undisclosed principal.

payable to the Minneapolis broker; and fifty shares of the stock held by the bank were issued in Braden's name and attached to the note as collateral. Braden did not own this stock; received none of the money; and had no personal interest in the transaction. The note was sent to the broker at Minneapolis, who endorsed it without recourse, procured the money from the City Bank of Portage, and sent it to the Chemical National Bank. He advanced no money on the note either to Braden or the bank; did not owe Braden anything; and the note was given by Braden to him purely as a means of raising money for the bank. There was also evidence that the board of directors of the Chemical National Bank, at a meeting thereof, had authorized the president to buy stock of the bank when offered for sale at par up to $100,000, agreeing to take it as soon as they could, but that no entry of this authority was made on the bank's records; that the money obtained on Hopkins' note was used in making such a purchase; and that the stock which was annexed to the Hopkins note and to that in suit was a part of the stock purchased under these circumstances, and not part of that taken by the bank upon a debt; of all which the City Bank of Portage had no notice.

The defence was that the purchase by the bank of its own stock was illegal; that it was equally illegal for the bank to borrow money to replace money paid out in making such a purchase; that that was what this transaction amounted to; and that plaintiff could not recover because the money was obtained and used for a purpose forbidden by section 5201 of the Revised Statutes of the United States, which is as follows:

" No association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith; and stock so purchased or acquired shall, within six months from the time of its purchase, be sold or disposed of at public or private sale; or, in default thereof, a receiver may be appointed to close up the business of the

association, according to section fifty-two hundred and thirty-four."

The Supreme Court held that the plaintiff was entitled to recover under the common counts; that it was unimportant to consider whether the Superior Court ruled correctly on the propositions of law requested on behalf of defendant since they all related to the right of recovery on the note; and the court said:

"Curry, president of the Chemical National Bank, was called as a witness, and it may be inferred from his evidence, although he does not state the fact, that the bank stock procured by the bank was not taken in on a debt, but was purchased. Conceding that the Chemical National Bank purchased fifty shares of its own stock, contrary to the provisions of the national banking act, does that unlawful act so pollute the transaction between plaintiff and defendant, under which plaintiff loaned its money, that the defendant may keep the money and the plaintiff bear the loss? If the facts were as claimed by counsel, they would not defeat a recovery on the part of plaintiff. The purchase of the stock and the borrowing of the money from plaintiff were two distinct transactions. In the purchase of the stock the money used by the defendant in payment was raised on the note of Hopkins, assistant cashier. Afterwards the bank paid the Hopkins note with its own funds, and this ended the transaction so far as the purchase of stock was concerned. After this transaction was ended the bank applied to the plaintiff for a loan of money and obtained it, placing the bank stock previously obtained in the hands of plaintiff as collateral. The plaintiff did not know where, of whom or in what manner the Chemical National Bank had acquired the bank stock turned over as collateral, nor did it know what use that bank would make of the money loaned. Moreover, this money was not loaned by plaintiff to pay for bank stock, and, so far as appears, it was never used for that purpose. So far as appears from the evidence there was nothing illegal in the transaction between plaintiff and defendant which resulted in the loan of $5000."

*Mr. Hiram T. Gilbert* for plaintiff in error.

*Mr. Daniel Kent Tenney* and *Mr. Samuel P. McConnell* for defendant in error.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

We are of opinion that the Supreme Court of Illinois in rendering judgment denied no title, right, privilege, or immunity specially set up or claimed by defendant under the laws of the United States, and that this writ of error cannot be maintained.

The contention of plaintiff in error is that the state court decided "either, *first*, that the cashier, Braden, by virtue of his office, had, under the laws of the United States regulating national banks, implied authority to borrow money in the name of the defendant and bind it to repayment thereof; or, *second*, that the transaction out of which the discounting of the Braden note arose, which transaction consisted of the original purchase of the fifty shares of the bank's stock, the giving of the Hopkins note, and the payment thereof out of the moneys of the bank was one which, in law, could be regarded as a transaction of the bank." And that therefore the state court decided against an immunity from liability expressly set up or claimed by the Chemical National Bank under the laws of the United States.

The Appellate Court reviewed the judgment of the Superior Court for errors committed on the trial, and, finding none, affirmed it, and the Supreme Court affirmed the judgment of the Appellate Court; and if no such claims were set up in the trial court, the Supreme Court, in approving the affirmance of its judgment by the Appellate Court, could not be held to have decided against a claim with which the trial court had not been called upon to deal. It does not appear that the immunity from liability was expressly claimed by plaintiff in error in the trial court on the ground that the bank could retain the money because it was obtained by means in excess of the powers of its cashier or other officers.

The propositions on which the trial court was asked to rule were manifestly directed to the right of recovery on the note as such, under the special count, and certainly fell far short of a claim of the character suggested as a defence to a recovery under the common counts. Moreover, the question of liability, whatever the authority of these bank officers to borrow this money for the bank, depended upon general principles of law applicable under the particular facts. *Western National Bank* v. *Armstrong*, 152 U. S. 346, 352, 353.

Nor can we perceive that the Supreme Court denied any immunity from liability claimed as arising out of the purchase by the bank of its own stock other than to prevent loss on previous indebtedness. The decision of the Supreme Court rested on the fact that that purchase of stock and the loaning of the money from the City Bank of Portage were two distinct transactions, and this was a ground broad enough to sustain the judgment without deciding any Federal question at all.

It is said that the Supreme Court had no power to decide any controverted question of fact, but we cannot review the decision of that court in that respect, even if the position were well taken; and we do not understand that the Supreme Court did so decide. It is true that, under sections 87 and 89 of the Practice Act, the Supreme Court of Illinois does not reëxamine controverted questions of fact, but it nevertheless examines the evidence bearing upon the issues of fact determined to see what principles of law are involved in a controversy, and whether they are properly applied by the trial court. *Sexton* v. *Chicago*, 107 Illinois, 323, 326; *Postal Telegraph Co.* v. *Lathrop*, 131 Illinois, 575, 580. In this case the Supreme Court recapitulated the evidence as being that on which the trial court rendered judgment in order to disclose the basis of the ruling that plaintiff was entitled to recover.

The affirmance by the Appellate Court of the judgment of the trial court without any recital of the facts found conclusively settles all controverted questions of fact necessary to support the judgment. *Utica & Deer Park Bridge Co.* v. *Iron Commissioners*, 101 Illinois, 518; *Bernstein* v. *Roth*, 145 Illinois, 189. If the Appellate Court disposes of a cause on

a finding of facts different from the finding of the trial court, it is its duty to recite in its final judgment the facts so found, (Rev. Stat. Ill. c. 110, § 87; 2 Starr & Curt. 1842,) but there was no such finding of facts by the Appellate Court here, and it is to be presumed that that court found the facts in the same way as did the trial court. As the Supreme Court proceeded to judgment upon the facts as thus determined, we must accept its view as controlling.

*Writ of error dismissed.*