CASE 23.—PROCEEDING BY THE CITIZENS' BANK AND OTH-
ERS TO ESTABLISH CLAIMS AGAINST THE BANK
OF WADDY, IN THE HANDS OF A RECEIVER, AND
OTHERS.—May 22.

# Citizens Bank, Etc. v. Bank of Waddy, Etc.

Appeal from Shelby Circuit Court.

R. F. PEAKE, Circuit Judge.

From the judgment defendants appeal—Reversed.

1. Banks and Banking—Borrowing Money—Limitations—Notice.
—One lending money to a bank limited by its articles of in-
corporation to the borrowing of money not in excess of a
specified sum, without having reason to know that the limit
has been exceeded by other loans made to it when added to
the loan made, is not affected by the limitation in the articles.

2. Same—Cashier—Apparent Authority.—It is within the appar-
ent scope of the authority of a cashier of a bank to pledge
its notes to secure money borrowed by him for the bank in
the regular course of business.

3. Same.—The lender of money to a bank through its cashier
acted in good faith and in the course of business. There was
nothing in the transaction to put him on notice that the cashier
exceeded his authority or misapplied the funds of the bank,
or that the bank authorities were not regularly constituted
and doing their duty. The cashier delivered to the lender a
spurious resolution, purporting to have been passed by the
bank's board of directors, authorizing the loan and the pledg-
ing of the bank's notes as collateral. Held, that the transac-
tion was binding on the bank.

4. Same.—The fact that a lender of money to a bank, through
its cashier, held a majority of the bank's stock as collateral
security for a loan to the cashier, did not apprise the lender
that there were no directors or that the stockholders were
taking no interest in the management of the bank, and the
bank was liable for the amount of the loan.

5. Same.—A bank may restrict the authority of its cashier, and,

when this is done, it is bound to those having notice, actual or constructive, of the restriction, to the extent of the cashier's actual authority.

6. Same.—The validity of transactions resulting in the making of a loan to a bank and receiving its notes as collateral security must be judged by what the lender knew when it lent the money in the first instance, and not by what it learned afterward and before it took a renewal note.

7. Bills and Notes—Bona Fide Holders.—A debtor of a bank gave a note for the amount of the debt. The cashier pledged the note as collateral security for a loan to the bank. When the note became due, the debtor gave a renewal note, and the cashier promised to return the original note. The cashier did not return it, but pledged the new note as collateral security for a loan to the bank by another party. Held, that the debtor was liable to both lenders, who must exhaust other collaterals before they could call on the debtor for more than the amount of the original note, with interest, and what he paid beyond the original note must be deemed a debt against the bank.

DODD & DODD for appellants.

POINTS AND AUTHORITIES.

1. The appellee, Weakley's, petition, as amended, expressly admits the validity of the debt of the Bank of Waddy to the Bank of Commerce for borrowed money and the pledge of collaterals to secure it, saying therein:

"That the Bank of Waddy is indebted to the Bank of Commerce in the sum of Three Thousand ($3,000.00) Dollars, and that the said Bank of Waddy has pledged some of its notes and bills to said Bank of Commerce to secure the payment of said loan."

2. The evidence very clearly, and without any conflict, shows the regularity and validity of the said debt and pledge, and the receipt and use of the Bank of Waddy, in the regular course of its business, of every dollar of the money so borrowed, and further, that the action of its cashier in thus borrowing from the Bank of Commerce was ratified and approved by the board of directors of the Bank of Waddy.

3. The judgment of the lower court, to the effect, that the Bank of Waddy had lawful authority to borrow this $3,000.00 from the Bank of Commerce, but "had no authority from the board

of directors to pledge any property of the Bank of Waddy to secure the same," is erroneous, and contrary to the law of the case. Martin v. Webb., 110 U. S., 14; Armstrong v. Chemical National Bank, 83 Fed. Rep., 557; 27 C. C. A., 601; Davenport v. Stone, 104 Mich., 520; Ditty v. Dominion National Bank, 75 Fed. Rep., 770; 22 C. C. A., 376; Blanchard v. Commercial Bank, 75 Fed. Rep., 253! 21 C. C. A., 319; Peoples Bank v. National Bank, 101 U. S., 181; Bank v. Flanders, 161 Mass., 335; Thomas v. Bank, 40 Neb., 501; Auten v. U. S. National Bank, 174 U. S., 143; Aldrich v. Chemical National Bank, 176 U. S., 618; Wyman v. Wallace, 201 U. S., 243; U. S. National Bank v. First National Bank, 79 Fed. Rep., 296; 24 C. C. A., 597; First National Bank v. American National Bank, 173 Mo., 162; Deposit Bank v. Fleming, 19 Ky. Law Rep., 1947; German National Bank v. Grinstead, 21 Ky. Law Rep., 674; Citizens Savings Bank v. Walden, 21 Ky. Law Rep., 739; Grant County Deposit Bank v. Points, 22 Ky. Law Rep., 105; Chemical National Bank v. Armstrong, 28 L. R. A., 240; as well as the elementary and other authorities cited in the brief of our associate counsel, Messrs. Willis & Todd.

WILLIS & TODD for appellant.

In asking for a reversal we rely upon the following points:

1. The cashier of a bank is its chief executive officer and has the inherent power to borrow money in the regular course of the bank's business, and pledge the bank's property as surety therefor.

2. (a) A banking corporation which receives and uses money borrowed in the regular course of business for its benefit, cannot repudiate the act by which the money was obtained and still hold the money.

(b) No material part of a single indivisible and entire transaction can be rescinded, and at the same time another part upheld to the injury or prejudice of one of the parties thereto, where there is no charge of fraud or deception.

3. The holder of negotiable paper deposited as collateral security is a holder for value to the extent of his lien.

## POINTS AND AUTHORITIES.

1. Power of the cashier: 2d vol., Amer. & Eng. Ency., 1st ed., p. 118; Cyc., vol. 5, pp. 570, 579; Thompson's Commentaries on the Law of Corporations, vol. 4, secs. 4740, 4748, 4760; Morse on Banks and Banking, 4th ed., vol. 1, secs. 152, 158, 160, 165; Dav-

enport v. Stone, 104 Mich., 321; Western National Bank v. Armstrong, 152 U. S., 346; Chemical National Bank of Chicago v. City of Portage, 160 U. S., 653; Auten, receiver, v. U. S. National Bank of New York, 174 U. S., 143; Aldrich v. Chemical National Bank, 176 U. S., 618; Grant v. Deposit Bank v. Points, 22 Ky. Law Rep., 105; Citizens Savings Bank v. Walden, etc., 21 Ky. Law Rep., 739; Deposit Bank of Carlisle v. Fleming, 19 Ky. Lew Rep., 1947.

2. Estoppel: German National Bank v. Grinstead, etc., 21 Ky. Law Rep., 674; German National Bank v. Butchers' Hide & Tallow Co., 97 Ky., 34; Springfield, Maysville & Harrodsburg Turnpike Co. v. Harrodsburg, 11 Ky. Law Rep., 309; Thompson's Commentaries on the Law of Corporations, vol. 4, secs. 5258, 5303; Cyc., vol. 16, p. 787; Harrison Land & Mining Co. v. N. C. & St. L. Ry. Co., 25 Ky. Law Rep., part 1, p. 523.

3. Appellants holders of notes for value: Secs. 26, 27, 57: The Law of Negotiable Instruments. (Charles M. Lindsay's Annotated edition); Woolfolk v. Bank of America, 10 Bush, 504.

J. C. BECKHAM & SON and BEARD & MARSHALL for appellee.

1. Appellant banks could get no higher or better title to the collateral placed with them than that held by the Bank of Waddy, the pledgor.

2. The charter of the Bank of Waddy limited the amount of its indebtedness.

AUTHORITIES CITED.

Chemical National Bank of New York v. Kohner, 8 Daly N. Y., 530; Western National Bank v. Armstrong, 152 U. S., 473; American National Bank v. Warren Deposit Bank, 29 Ky. Law Rep., 195; First National Bank v. Kiefer Milling Co., 95 Ky., 97; Ky. Stats., sec. 579; Walden v. Citizens Bank, 19 Ky. Law Rep., 1393; Poor v. Robinson, 13 Bush, 290; Brannin v. Force, 12 B. M., 506; 152 U. S., 347; Morse on Banks and Banking, sec. 165(b).

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

In the year 1900 the Bank of Waddy was incorporated under the Kentucky Statutes; the capital stock being fixed at $15,000. It was provided by the articles of incorporation that the indebtedness of the bank,

except to depositors, should not exceed one-half the amount of the capital stock. L. W. Ditto was elected president and T. B. Hancock cashier. They were also two of the directors of the bank. The latter part of the year 1903 some of the directors became dissatisfied with Hancock as cashier, and at this juncture Hancock bought the stock of all the directors; the stock being assigned to him in blank constituting a majority of the stock in the bank. From this time on there was no board of directors. Hancock ran the bank as cashier, and there was no stockholders' meeting and no action was taken by the minority stockholders. Hancock took the stock which he had gotten from the directors and hypothecated it with the First National Bank of Louisville for a loan of $4,000. He made some payments on the note afterwards, but there was a balance of $3,000 of this debt outstanding when the Bank of Waddy made an assignment in January, 1906. The First National Bank still held the shares of stock as collateral to the note. On September 15, 1905, while Hancock was running the Bank of Waddy as above stated, in the name of the Bank of Waddy he borrowed $4,000 of the Fifth National Bank of Cincinnati, hypothecating to secure the note a number of notes executed to the Bank of Waddy by persons who had borrowed money from it. This note to the Fifth National Bank was renewed on January 16th, just before the assignment. In the same way in July, 1905, he borrowed $3,000 of the Bank of Commerce of Louisville giving a note which was secured by a number of notes as collateral, and it was renewed from time to time until about the time the bank failed. In November, 1905, he borrowed in like manner from the First National Bank of Louisville $3,000, and hypothecated a number of notes

executed to the Bank of Waddy. All of these three
last loans were made in the name of the Bank of
Waddy by Hancock as cashier, and the money was
paid over to the Bank of Waddy by the banks lending
the money. It was used by the Bank of Waddy.
When the bank failed, it owed its depositors about
$23,000 and the assets, outside of the notes which had
been pledged to the three banks above referred to,
were sufficient to pay only a small part of the indebt-
edness. In the suit brought to settle the accounts of
the assignee the circuit court held that the three
banks above referred to had claims against the Bank
of Waddy for the amount of money which they had
paid it, but it denied them a lien upon the collateral
which they held and required them to turn over the
collateral notes to the receiver. From this judgment
they appeal.

The limit of indebtedness for borrowed money
which the Bank of Waddy could contract was $7,500,
and every person dealing with a corporation is
charged with notice of its powers under its articles
of incorporation. But a creditor whose own debt
against the corporation does not exceed the limit,
and who has no reason to know that the limit has been
exceeded, is not affected by the fact that there are
other debts of which he has no notice which, when
added to his own, make an aggregate indebtedness
greater than the corporation can legally incur. Bell
& Coggeshall Company v. Kentucky Glass Works,
106 Ky. 7, 20 Ky. Law Rep. 1684, 21 Ky. Law Rep.
133, 50 S. W. 2, 1092, 51 S. W. 180; 3 Cyc. 472.
The debt of each bank was less than the limit, and
none of them knew, or had reason to know, of the
debts of the others, or that the limit of indebtedness
had been exceeded. The debts of the banks are there-

fore not affected by this provision of the articles of incorporation.

The proof is unquestioned that the money borrowed was paid to the Bank of Waddy, and was used by the Bank of Waddy. The Bank of Waddy is therefore liable for the money, as it cannot be allowed to take the money and use it without accounting for it. It is insisted, however, that the cashier, Hancock, was without power to borrow money or hypothecate the notes of the Bank of Waddy for it, and that the lending banks, therefore, acquired no lien upon the collateral. Hancock, to deceive the banks, furnished two of them what purported to be authority from the board of directors to him to make the loans, but these papers turn out to be forgeries. There was in fact no board of directors and no entries were ever made on the directors' books after January, 1904, when Hancock bought the stock of the directors, and there was never an election of directors after this. The two banks required Hancock to furnish them these papers out of abundance of caution, and, as they were void, the question remains whether Hancock as cashier had apparent authority to do the acts referred to, for, if he acted within his apparent authority, the Bank of Waddy is bound by his action, although he did not have the express authority which he professed to have. The case is an unusual one, in this: that there were no directors of the bank and no president. The only officer it really had was the cashier. The stockholders allowed the bank to be run by Hancock as cashier. Under such circumstances he had all the authority, as to one having no notice of the facts, that a bank cashier may properly exercise. As he was admittedly cashier, and there were no limitations upon his authority, he could exercise those powers

which are within the apparent scope of the authority
of a bank cashier. The cashier is the agent of the
bank. His acts, within his official sphere, are binding
on the bank, and by the general current of the later
authorities he may borrow money in the regular
course of the bank's business and pledge its property
for its payment. 5 Cyc. 579; 4 Thompson on Corpo-
rations, section 4748; 1 Morse on Banking, sections
158, 160; Davenport v. Stone, 53 Am. St. Rep. 467,
104 Mich. 521, 62 N. W. 722; Chemical National Bank
v. City Bank, 160 U. S. 653, 16 Sup. Ct. 417, 40 L.
Ed. 568; Auten v. U. S. National Bank, 174 U. S. 143,
19 Sup. Ct. 628, 43 L. Ed. 920; Aldrich v. Chemical
National Bank, 176 U S. 118, 20 Sup. Ct. 498, 44 L.
Ed. 611. It follows from these authorities that it was
within the apparent scope of the cashier's authority
to pledge the notes of the Bank of Waddy to secure
the money borrowed by it. Such transactions be-
tween country banks and city banks are of common
occurrence, and there was nothing in the circum-
stances known to the lending banks to put them on
notice that there were any defects in the authority
of Hancock as cashier. The resolution of the direct-
ors was required by two of the lending banks so as
to apprise the directors of what the cashier was
doing and the better to secure the payment of their
money at maturity. The fact that Hancock delivered
to them spurious resolutions which had not been
passed by the board of directors did not put the lend-
ing banks in a worse position than they would have
been without these papers, which were simply nulli-
ties. The lending banks stand just as they would
have stood if they had lent the money to the Bank of
Waddy through Hancock as cashier without requiring
anything from the board of directors. The spurious-

ness of the papers deprived the banks of the added security they expected to derive from the co-operation of the board of directors, but it had no other effect on the transaction. The lending banks are entitled to a lien on the collateral pledged to them for the payment of their loans. They acted in good faith, and in the usual course of business, and there was nothing in the transactions to put them on notice that Hancock as cashier was exceeding his authority or misapplying the funds of the bank, or that the bank authorities were not regularly constituted and doing their duty. The fact that the First National Bank of Louisville held a majority of the stock as collateral security for a loan to Hancock did not apprise it that there were no directors, or that the stockholders in the bank were taking no interest in its management. Everybody in this record treated Hancock as cashier of the bank and as possessing all the powers incidental to the position. The depositors instrusted their money to him. The stockholders treated him in the same way. Under such circumstances they who trusted most should lose rather than those who required security before parting with their money. A bank may restrict the authority of its cashier, and, when this is done, it will be only bound to those having notice, actual or constructive, of the restriction, to the extent of his actual authority. But here there was no restriction upon the authority of the cashier. Obviously a bank cashier has authority, when he finds his cash running low at the close of a day's business, to borrow cash from another bank upon collateral to make ends meet; and, if he foresees that he may get in this condition, he may make such a loan in advance. It is said here that, when the notes were renewed from time to time, the lend-

ing banks had notice that something unusual was going on. But the transactions are to be judged by what the banks each knew when it lent the money and not by what it learned afterwards when it was too late to help matters.

E. J. Paxton executed to the Bank of Waddy a note on April 5, 1905, for $2,000. Hancock as cashier pledged this note to the Bank of Commerce as collateral security for the money above referred to borrowed from it. When Paxton's note fell due in September, Hancock called upon Paxton to renew it. This Paxton did, and Hancock said to him that he would get the old note in a few days and deliver it to him. Instead of doing this, however, Hancock pledged this note to the Fifth National Bank of Cincinnati to secure the loan made by it. The question now presented is whether Paxton is bound to both the banks as innocent holders of the paper. In Wilkins v. Usher, 123 Ky. 696, 97 S. W. 37, 29 Ky. Law Rep. 1232, it was held that the holder of a note to whom it is assigned as collateral security is a holder for value, although his debt had been previously created. Neither of the banks had notice of any infirmity in the note which it took. Under the present statute Paxton is therefore liable to each bank, but each bank should be required to exhaust first its other collateral before he is required to pay to both of them anything more than $2,000 and interest in the aggregate. He owes $2,000, and whatever he has to pay beyond $2,000 and interest will be a debt against the Bank of Waddy whose debt he will to this extent pay off. If either of the banks to which his notes are assigned can collect its debt out of its other collateral, it should be required to do so as to protect him from having to pay twice.

Judgment reversed, and cause remanded for a judgment and further proceedings as herein indicated.