FOIL, Judge.
In this action to enforce promissory notes executed by 41 makers, we are asked to determine whether the makers are precluded by the operation of federal law from asserting defenses to payment against the Resolution Trust Corporation (RTC). Be *1004 cause we find material issues of fact exist in this case regarding the ability of the makers to assert the defenses, we affirm the trial court’s refusal to grant RTC’s motion for summary judgment on the notes.
BACKGROUND
These consolidated suits were initially brought by Albuquerque Federal Savings & Loan Association (the Bank) on January 28, 1988, against numerous individuals (the Makers) who executed promissory notes payable to White Cypress Lakes Development Corporation (WCLDC) in connection with the purchase of land. WCLDC pledged the promissory notes as security on a 2.8 million dollar loan it obtained from the Bank. WCLDC defaulted on its obligation and the Bank filed this suit to enforce the promissory notes. The Makers answered and asserted a host of defenses to payment.
After the filing of this suit, RTC was appointed as Conservator of the Bank on February 8, 1990, and was appointed as Receiver of the Bank on March 1, 1991. RTC was then substituted as the proper party plaintiff in this action, and it filed a motion for summary judgment on the notes. RTC insisted that all of the defenses asserted by the Makers were barred by the application of federal law and that it was therefore entitled to judgment on the notes. The trial court refused to grant RTC’s motion, and this court denied RTC’s writ application contesting that determination. RTC then applied for writs to the Louisiana Supreme Court, which granted their request and remanded the case to this court for briefing, argument and an opinion. Resolution Trust Corporation v. De-ville, 604 So.2d 1300 (La.1992).
SUMMARY JUDGMENT
A motion for summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966; Louisiana National Bank v. Slaughter, 563 So.2d 445 (La.App. 1st Cir.1990). The burden of showing that there is no genuine issue of material fact is on the mover and all doubts must be resolved against the mover and in favor of a trial on the merits. Chaisson v. Domingue, 372 So.2d 1225 (La.1979). Inferences to be drawn from underlying facts contained in materials before the court must be viewed in the light most favorable to the party opposing the motion for summary judgment. Vermilion Corporation v. Vaughn, 397 So.2d 490 (La.1981).
A review of the pleadings discloses that the notes sued on were executed by the Makers as part of an owner-financing arrangement to secure the purchase of land in Mississippi. WCLDC, a Mississippi corporation, purported to sell the Makers lots in a subdivision located in Mississippi, upon which they were to build camps. The Makers executed promissory notes representing the cost of the lots, payable to WCLDC in monthly installments. The lots were purportedly conveyed under a “Deed of Trust” document. Simultaneously with the execution of these documents, the Makers executed a Sale/Lease Buy Back Agreement and a Lease Agreement (the Agreements) with United Asset Corporation (UAC), apparently an affiliate of WCLDC, in which UAC agreed to lease the lots in question from each of the makers in the amount of the monthly notes for a period of five years. The agreement also gave the Makers the right to insist that UAC buy back the lots after five years. UAC also guaranteed it would cover the operating expenses on the lots during the five year period.
Thereafter, WCLDC pledged the promissory notes to the Bank as security for a 2.8 million dollar loan. Following WCLDC’s default on its loan, the Bank brought this suit to enforce the promissory notes executed by the Makers. Several of the Makers, through discovery requests, demanded that the Bank furnish information on the loan transaction. The Bank submitted its answer to interrogatories with attachments thereto on May 9, 1988. Its answers to interrogatories reveal that Michael E. Sla- *1005 ten, the Bank’s Assistant Vice President, had knowledge of the transfer of the notes sued upon. The Bank’s documentation also contained the Pledge and Security Agreement, executed by it and WCLDC on June 3, 1987. In this document, WCLDC pledged to the Bank, as security on its 2.8 million dollar loan, “[a]ll notes or contracts from or related to the White Cypress Project in Hancock County, Mississippi, which are delivered to AFS&L....” In the agreement, WCLDC also explicitly transferred to the Bank “[a]ll collateral, security, information and other documents, instruments and agreements related to or for the Notes and Contracts.” The agreement made it clear that WCLDC was transferring all of its rights, title and interest in the Notes, Contracts, collectively referred to as the “Sales Documents.” A copy of the Sale/Lease Buy Back Agreement and the Lease Agreement, fully executed by UAC and one of the Makers, is also contained in the attachments.
The Makers asserted a host of defenses to payment, including: error, mistake, es-toppel, extinguishment of the obligation, fraud, illegality of the transaction, transaction and compromise and failure of consideration. In the answers, the Makers alleged that they had been fraudulently and illegally induced into signing the documents. They also alleged failure of consideration in that the seller and its agents failed to perform any of the obligations underlying the consideration given for the instruments. The Makers further asserted that the underlying transaction was void because it was entered into in violation of a host of state and federal laws, including the Interstate Land Sales Full Disclosure Act, and because the collateral was worthless.
In its motion for summary judgment on the notes, RTC insisted that all defenses asserted by the Makers were barred by federal common and statutory law. It attached the affidavit of Michael E. Slaten, RTC’s Collection Manager for the Bank, who attested that he was personally familiar with the account by virtue of his examination of the Bank’s records. He attested that the Agreements referred to by the Makers were not executed between the Makers and the Bank; they were never made part of the Bank’s official records; and they were never ratified by the Bank’s board of directors.
In opposition to the motion for summary judgment, the Makers asserted that RTC did not establish its right to use the summary proceedings because it did not make a Pledge and Security Agreement originally made payable to the WCLDC part of the record to validate the endorsement of the notes sued upon. Some of the Makers filed affidavits in which they attested that they were never given any information with respect to the Interstate Land Sales Act prior to the sale. They also stated that they had never been given access to or use of the property. Further, the Makers attested that the property was not actually owned by WCLDC at the time WCLDC transferred it to them and that the titles and documents showing title were themselves forgeries, incomplete or incorrect.
D’OENCH DUHME ESTOPPEL DOCTRINE
In D’Oench, Duhme & Co. v. Federal Deposit Ins. Corporation, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the United States Supreme Court held that the maker of a note could not assert as a defense to its enforcement a secret agreement between the note’s maker and the lending bank when the note had been acquired by the federal insurer. The D’Oench, Duhme decision and its progeny have developed a well known federal common law doctrine immunizing the FDIC and the RTC, as receivers and conservators of defunct financial institutions, from claims and defenses based on agreements not firmly established in the failed financial institution’s official records. Resolution Trust Corporation v. Oaks Apartments Joint Venture, 966 F.2d 995 (5th Cir.1992). The doctrine bars defenses or claims based on oral or secret agreements between the financial institution and borrower which alter or condition the terms of existing unqualified obligations. It also precludes the enforcement of any defense based on a written agree *1006 ment that is not found within the bank’s records. Federal Deposit Insurance Corporation v. Hamilton, 939 F.2d 1225 (5th Cir.1991). There are two central policy justifications for the D’Oench, Duhme’s bar to oral agreements and collateral writings. The first concern is to ensure that bank examiners may accurately assess the condition of a bank based on its records. A second justification for the rule is that the obligor, who in theory is better able to protect himself by insisting that the collateral terms be put in writing and properly recorded by the bank, should suffer the loss caused by the record omissions, rather than the federal insurer or the bank’s innocent depositors and creditors. Federal Deposit Insurance Corporation v. Hamilton, 939 F.2d at 1229-1230.
• 12 U.S.C. § 1823(e) is the statutory codification of D’Oench, Duhme. This section grants to the RTC the power to avoid any agreement which tends to diminish or defeat the interest of the RTC in any asset acquired by it as a receiver unless such agreement: (1) is in writing; (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset; (3) was approved by the depository institution’s board of directors or its loan committee; and (4) has been continuously an official record of the depository institution. This section effectively bars claims against the RTC based on unrecorded agreements. Federal Deposit Insurance Corporation v. Hamilton, 939 F.2d at 1230-1231. The purpose of this statute is to protect the federal agency from hidden agreements which would defeat its interest in what is otherwise a facially valid note, as such agreements would hinder it from accurately valuing a bank’s assets. Commerce Federal Savings Bank v. Federal Deposit Insurance Corp., 872 F.2d 1240 (6th Cir.1989).
While the doctrine and statute have been applied expansively by the federal courts, there is at least one instance in which the courts have refused application of the rule. Where the asset upon which the FDIC is attempting to recover is the very same agreement that the maker alleges has been breached by the FDIC’s assignors, the doctrine and the statute simply do not apply. Federal Deposit Insurance Corporation v. Laguarta, 939 F.2d 1231 (5th Cir.1991); Riverside Park Realty Company v. Federal Deposit Insurance Corporation, 465 F.Supp. 305 (M.D.Tenn. 1978). The D’Oench, Duhme doctrine does not prohibit claims and defenses based on written agreements that are integral to the loan transaction. Resolution Trust Corporation v. Oaks Apartments Joint Venture, 966 F.2d at 999; Federal Deposit Insurance Corporation v. Laguarta, 939 F.2d at 1239.
Further, the language of § 1823(e) indicates that it applies only to an action or defense which is anchored in an agreement separate and collateral from the instrument which the federal agency is seeking to protect. Commerce Federal Savings Bank v. Federal Deposit Insurance Corp., 872 F.2d at 1244. Where the obligors do not assert a separate agreement to defeat the rights of the federal agency, the argument that § 1823(e) applies must fail. Riverside Park Realty Company v. Federal Deposit Insurance Corporation, 465 F.Supp. at 313. In short, when defenses arise not from any secret agreement, but directly from the text of the loan agreements, defenses based upon those express provisions are not barred by either the D’Oench, Duhme doctrine or § 1823. Federal Deposit Insurance Corp. v. Vernon Real Estate Investments, LTD., 798 F.Supp. 1009 (S.D.N.Y.1992).
RTC argues that all of the defenses asserted by the Makers are barred by the application of D’Oench, Duhme and 12 U.S.C. § 1823(e). First, RTC attacks the defenses on the basis that they all arise out of the Agreements executed by the Makers and WCLDC’s affiliate. It maintains that the Sale/Lease Buy Back and Lease agreements are entirely secret, separate and collateral agreements and any defenses arising therefrom are barred. RTC cites this court to a number of Louisiana cases which have used 12 U.S.C. § 1823 to preclude *1007 debtors from asserting defenses to payment, thereby upholding the grant of summary judgment on the obligations. However, in most of the cases granting summary judgment pursuant to 12 U.S.C. § 1823, alleged oral promises by the bank’s representatives were involved. See Grant v. Federal Land Bank of Jackson, 559 So.2d 148 (La.App. 2d Cir.), writs denied, 563 So.2d 886, 563 So.2d 887 (La.), cert. denied, 498 U.S. 922, 111 S.Ct. 301, 112 L.Ed.2d 254 (1990) (oral agreement to release collateral at the request of the borrower); Metropolitan Bank & Trust Company v. Prestridge, 551 So.2d 743 (La.App. 1st Cir. 1989), writ denied, 556 So.2d 35 (1990) (oral promise by the bank’s representatives that there would be no personal liability on the loan); Planters Trust & Savings Bank v. L & W Farms, Inc., 496 So.2d 1268 (La.App. 3d Cir.1986), writ denied, 499 So.2d 87 (La.1987) (alleged written agreement evidencing line of credit found not to exist). However, in Resolution Trust Corp. v. Maldonado, 595 So.2d 774 (La.App. 4th Cir.1992), the D’Oench, Duhme doctrine and 12 U.S.C. § 1823 were applied to preclude an obligor on a promissory note, who was apparently involved in the same transaction as the Makers in this suit, from asserting any defenses to payment. Maldonado upheld the grant of a summary judgment in favor of the RTC on the note. For the reasons expressed herein, we disagree with the Maldonado decision.
The Agreements serving as the basis for a number of the Makers’ defenses were integral to the obligation that the RTC is presently attempting to enforce against the Makers, that is, they form an integral part of the owner-financing arrangement entered into between the Makers and WCLDC. They were signed contemporaneously with the signing of the promissory notes and the Deeds of Trust. Further, these agreements formed part of the loan transaction entered into between WCLDC and the Bank. The Pledge and Security Agreement, executed between WCLDC and the Bank, assigned all of WCLDC’s rights, title and interest in the notes and contracts. That instrument also specifically transferred to the Bank all collateral, security, information and other documents, instruments and agreements related to or for the notes and contracts. The documents relied on by the Makers, which were integral to their loan transaction, were incorporated by reference in the security arrangement between WCLDC and the Bank.
On a motion for summary judgment, we are bound to construe the evidence in a light most favorable to the Makers. Although RTC filed an affidavit by the Bank officer who handled the loan attesting that the Sale/Lease Buy Back and Lease agreements were never part of the financial institution’s records, the agreements appear in the documentary evidence submitted by the Bank at the outset of this litigation. The very presence of these documents in the hands of the financial institution creates a material issue of fact regarding whether the Makers can assert defenses arising therefrom, as defenses based on the express provisions of loan agreements are not barred by either the D’Oench, Duhme doctrine or by § 1823(e).[1] Federal Deposit Insurance Corp. v. Vernon Real Estate Investments, LTD., 798 F.Supp. at 1014-1015.
Additionally, the Makers have urged defenses which clearly fall outside the scope of the D’Oench, Duhme doctrine *1008 and its statutory counterpart. The doctrine and the statute are inapplicable where the underlying contract and note are void, ab initio. A bank holding a voidable note can transfer to the RTC voidable title, which is sufficient to constitute an “interest” in the note within the meaning of § 1823. Langley v. Federal Deposit Insurance Corporation, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). However, neither the doctrine nor the statute bar a Maker from asserting a “real defense” which renders an instrument entirely void, because asserting such a defense could not defeat any interest of the RTC in that note, as the RTC would not have had any interest to start with. Brogdon v. Exterior Design, 781 F.Supp. 1396 (W.D.Ark.1992); Federal Deposit Insurance Corporation v. Meyer, 755 F.Supp. 10 (D.D.C.1991). Additionally, the doctrine and statute do not apply where the parties contend that no asset exists and that such invalidity is caused by acts independent of any side agreement or understanding. Commerce Federal Savings Bank v. Federal Deposit Insurance Corp., 872 F.2d at 1245.
The Makers assert that the entire underlying transaction is illegal and therefore void ab initio; they allege that WCLDC did not have title, to the property it purported to sell them. If the Makers could prove that the underlying transaction was a complete sham, title never passed and the RTC has no “interest” which can be defeated by allowing the Makers to assert the defense.
The Makers have also alleged that WCLDC violated federal laws which rendered the transaction void, including the Federal Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq. Section 1703 of that Act declares that it shall be unlawful for any developer to sell lots in covered subdivisions in numerous instances, including: (1) failing to file certain documentation with the federal government; (2) failing to furnish the prospective purchaser with a property report meeting the requirements of the act; or (3) employing any scheme or artifice to defraud a purchaser. 15 U.S.C. §§ 1703(a)(l)(A)(B); 1703(a)(2)(A). The same statute grants to the purchaser the right to revoke the sale for violations of its provisions. 15 U.S.C. § 1703(b)(c)(d).
The Makers alleged in their defenses that the developer, WCLDC, failed to furnish them with a copy of a property report as required by the Land Sales Act. They also alleged that they received a letter from the Housing and Urban Development Agency, apprising them that they could revoke the sale for the failure to furnish a property report.
RTC insists that any violation of this statute would only render the transaction “voidable” at the purchaser’s option, and therefore the Makers may not assert a violation of this statute as a defense to payment. However, this statute clearly does not constitute an “agreement” subject to the application of D’Oench, Duhme and § 1823(e).
As' is readily observable, there are material issues of fact surrounding the Makers’ defenses which must be fully developed in a trial on the merits before it can even be determined whether those defenses are precluded by the D’Oench, Duhme doctrine and its statutory companion. Thus, we cannot say, as a matter of law, that the Makers are precluded wholecloth from raising defenses by the application of the doctrine and statute.
FEDERAL HOLDER IN DUE COURSE DOCTRINE
RTC maintains that all of the Makers’ defenses are barred by the Federal Holder in Due Course Doctrine. Federal law has clothed the FDIC, RTC’s predecessor, with holder in due course status in connection with purchase and assumption transactions involving insolvent banks, even where the federal agency does not meet the technical requirements of state law, as a matter of federal common law. Campbell Leasing, Inc. v. Federal Deposit Insurance Corporation, 901 F.2d 1244 (5th Cir.1990); Federal Savings and Loan Insurance Corporation v. Murray, 853 F.2d 1251 (5th Cir.1988). However, the federal agency is not accorded holder in due course status in every instance. A *1009 holder in due course by definition takes the instrument for value and in good faith and without any knowledge of a defense against or claim to it on the part of any person. La.R.S. 10:3-302(l)(a)(b)(c). At least one federal court has refused to accord the FDIC holder in due course status where the defenses an obligor is seeking to assert are based on the explicit provisions of the loan agreement. Federal Deposit Insurance Corp. v. Vernon Real Estate Investments, LTD., 798 F.Supp. at 1016.
As discussed earlier, the Bank submitted documentary evidence in connection with discovery requests aimed at uncovering the circumstances surrounding the loan transaction. The documents were filed into evidence on May 9, 1988, well before RTC was appointed as Receiver of the failed institution. Those documents, forming part of the official court record, contain the Agreements relied on by the Makers. Further, in that documentation appears a letter from WCLDC, dated October 7, 1987, advising one of the Makers that UAC had no funds with which to make their lease payments. Another letter revealed that lawsuits had been filed against the Corporation by some of the clients. Additionally, there is a letter to the president of WCLDC from the Department of Housing and Urban Development, Interstate Land Sales Registration Division, apprising that copies from 11 purchases of registered and unregistered lots in the White Cypress Lakes subdivision had been received. The document spells out that there appeared to be a lease back agreement entered into on the same date of the lot purchase in which the purchaser leased back the lot to UAC. The letter concluded that these “unusual transactions” may be a violation of the Interstate Land Sales Full Disclosure Act and may be voidable at the option of the purchasers.
The presence of these documents, which reveal that defenses existed to the Makers’ payment on their obligations, raises an issue of fact regarding the knowledge element which would defeat holder in due course status. We cannot say, on the record before us, that RTC is entitled to holder in due course status as a matter of law. Additionally, the Makers have asserted defenses viable against a holder in due course, such as illegality rendering the transaction an absolute nullity. La.R.S. 10:3-305(2)(b). The asserted violations of the Interstate Land Sales Full Disclosure Act also raise issues as to the viability of the underlying transaction. See Brogdon v. Exterior Design, 781 F.Supp. at 1399, holding that a violation of a state law mandating that a foreign corporation file certain documents with the state in order to do business therein rendered a construction contract unenforceable, and the note and mortgage executed with it were declared void ab initio. We conclude that the Makers are not precluded, as a matter of law, from asserting defenses to payment by the application of the federal holder in due course doctrine.
CONCLUSION
Based on the foregoing, we find that there are material issues of fact regarding the Makers’ defenses, precluding summary judgment on the notes. We affirm the decision of the trial court. All costs of this appeal are assessed to plaintiff, Resolution Trust Corporation.
AFFIRMED.

. Riverside Park Realty Company v. Federal Deposit Insurance Corporation, 465 F.Supp. 305 (M.D.Tenn.1978), left open the question of whether § 1823 could ever apply to a transaction to which the closed bank was not originally a party. RTC insists that the Makers are barred from asserting defenses on the basis of the Agreements because they were not actually executed by the Bank and the Makers. This argument ignores the nature of the pledge transaction at issue here. Surely Congress could never have intended, by enacting this statute, to give the federal receiver an absolute shield to any defenses any time obligations are pledged or sold simply because the failed institution was not an actual party to the initial transaction. The Agreements were incorporated into the loan securing WCLDC's indebtedness to the Bank; the Bank took the Maker’s promissory notes subject to those agreements. The real issue is whether those agreements were part of the loan file for the purpose of assessing the validity of RTC’s argument on the impact of § 1823(e)'s bar.