I2FOIL, Judge.
At issue in this appeal is whether the trial court erred in allowing the makers of a promissory note to urge defenses to payment of the note. We hold that all of the defenses raised by the makers are barred by federal law, and reverse.
FACTUAL AND PROCEDURAL BACKGROUND
On April 3,1991, plaintiff, The Cadle Company (Cadle), filed this suit on a promissory note seeking to recover the balance owed thereon from the makers of the note, Bobby and Kim Johnson. The note in question was made payable on demand to the order of First National Bank, and plaintiff alleged that it is the holder in due course of the note. Plaintiff sought to recover the balance of $112,699.73, interest in the amount of $29,-499.69, calculated through March 1, 1991, attorneys fees in the amount of 25% of the amount due, and all costs of the proceeding.
Defendants answered, asserting that Cadle is not a holder in due course and is therefore subject to all defenses to payment of the note that First National Bank was subject to. Defendants plead the defenses of: (1) lack of consideration; (2) duress; (3) misrepresentation; (4) fraud; and (5) violation of the Louisiana securities law.
Cadle filed a motion for summary judgment, and offered a copy of the promissory note. Cadle also argued in its motion for *185 summary judgment that defendants were precluded by federal law from asserting the alleged affirmative defenses to payment on the note.
Cadle’s motion for summary judgment was granted by the trial court. However, that ruling was reversed by another panel of this court, which held that Cadle failed to put forth sufficient evidence of ownership of the note to warrant the imposition of summary judgment because it introduced only a copy of the note and did not justify its failure to produce the original note. The ease was remanded to the trial court. The Cadle Company v. Johnson, 92-1745 (La.App. 1 Cir.1993), 621 So.2d 217.
| ⅞ Thereafter, a trial was held at which Ca-dle introduced the original promissory note, executed on January 27, 1988, by Bobby and Kim Johnson, payable to First National Bank on demand in the amount of $112,699.73. On May 4, 1989, the Federal Deposit Insurance Corporation (FDIC) acquired the note and all related documentation as the receiver of First National Bank. In March of 1990, FDIC sold that note to the Cadle .Company II, Inc. (Cadle II) as part of a bulk sale of similar assets. On February 27, 1991, the note was assigned by Cadle II to Cadle.
It is not disputed that defendants never made a payment on the note. At trial, they sought to offer evidence justifying their failure to pay, which was objected to by plaintiff on the basis that federal law precludes defendants from urging the relied upon defenses to the payment of the note. The trial judge allowed the defendants to put on evidence in support of their defenses.
Bobby Johnson testified that the note sued on was a consolidation of two notes secured by him prior to his marriage to Kim Johnson. Mrs. Johnson stated that the bank forced her to sign the note sued on under the threat of calling in Bobby’s notes. Bobby testified that the purpose of the original loan was to secure the purchase of bank stock. According to Bobby, he was told by First National Bank’s vice-president that his business loans would be called unless he agreed to purchase stock in First National Bank. He testified that he agreed to purchase 10,000 shares of stock and borrowed the money from First National Bank to do so. Bobby stated that he never saw the stock, and never received anything of value for the loan.
Defendants also introduced an interoffice memorandum dated August 5, 1987 from Wayne McCants, the Vice-President of First National Bank, to the Bank’s Senior Loan Committee regarding Mr. Johnson. The memo indicated that Johnson purchased 10,-000 shares of stock the previous year. According to Cadle’s record custodian, Arlene Hauser, this memorandum was in the original bank file turned over to Cadle II by the FDIC.
Ms. Hauser testified that there was nothing in the file directly linking the stock purchase and the note sued on. She referenced the memorandum from 14Wayne McCants, and a notation that stock was pledged to secure the original loans as indicating indirectly that the sale of stock was involved in the loan. She noted that there was no stock in the file at the time of the transfer. She also testified that after reviewing the file, she learned that First National Bank had loaned money on some of the stock transactions.
At the conclusion of the trial, the judge found that federal law did not preclude the defenses urged by the Johnsons, and she upheld those defenses, dismissing plaintiffs suit. This appeal followed.
DISCUSSION
Plaintiff argues that the defendants are precluded from raising defenses to payment of the note under the D’Oench, Duhme estoppel doctrine, which precludes the maker of a note from offering a “secret agreement” as a defense to payment when the note has been acquired by the FDIC. In Albuquerque Federal Savings & Loan Association v. De-ville, 615 So.2d 1002 (La.App. 1st Cir.), unit denied, 617 So.2d 936 (La.1993), the origin of the doctrine and the purposes behind it were explained as follows:
In D’Oench, Duhme & Co. v. Federal Deposit Ins. Corporation, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the United States Supreme Court held that the maker of a note could not assert as a defense to its enforcement a secret agreement be *186 tween the note’s maker and the lending bank when the note had been acquired by the federal insurer. The D’Oench, Duhme decision and its progeny have developed a well known federal common law doctrine immunizing the FDIC and the RTC, as receivers and conservators of defunct financial institutions, from claims and defenses based on agreements not firmly established in the failed financial institution’s official records.... The doctrine bars defenses or claims based on oral or secret agreements between the financial institution and borrower which alter or condition the terms of existing unqualified obligations. It also precludes the enforcement of any defense based on a written agreement that is not found within the bank’s records ... There are two central policy justifications for the D’Oench, Duhme’s bar to oral agreements and collateral writings. The first concern is to ensure that bank examiners may accurately assess the condition of a bank based on its records. A second justification for the rule is that the obligor, who in theory is better able to protect himself by insisting that the collateral terms be put in writing and properly recorded by the bank, should suffer the loss caused by the record omissions, rather than the federal insurer or the bank’s innocent depositors and creditors....
Albuquerque Federal Savings & Loan Association v. Deville, 615 So.2d at 1005-1006 (Citations partially omitted).
_JjjThe protection of the D’Oench, Duhme doctrine has been extended by the federal courts to protect entities to whom the FDIC, acting in its capacity as receiver of failed banks, has transferred assets formerly belonging to a failed bank. First Union National Bank of Florida v. Hall, 123 F.3d 1374, 1379 n. 8 (11th Cir.1997); NCNB Texas National Bank v. Johnson, 11 F.3d 1260, 1268 (5th Cir.1994). Thus, Cadle is entitled to rely on the protection of the D’Oench, Duhme doctrine.
The D’Oench, Duhme doctrine has also been extended through the development of federal common law to apply to situations other than those involving “secret agreements” between the maker and bank officials. Federal Deposit Insurance Corporation v. Bernstein, 944 F.2d 101, 108 (2d Cir.1991). It has been relied on to bar a variety of claims or defenses grounded in defects in formation, such as fraudulent inducement, unconscionability, nondelivery, failure of consideration, usury, undue influence, as well as claims that the contract has been varied after formation by means of waivers or settlement agreements. See Atkinson, Chris, “Defensing the Indefensible: Exception to D’Oench and 12 U.S.C. § 23”, 63 Fordham L.Rev. 1337, 1364 (1995) and cases cited therein.
Defendants urge defenses of lack of consideration, fraud and misrepresentation, duress, and a violation of the federal banking law. They rely heavily on the decision in Albuquerque Federal Savings & Loan Association v. Deville, 615 So.2d 1002, 1008, wherein this court found that the makers-of various notes were not barred, as a matter of law, from asserting personal defenses to payment of the notes. In that case, the RTC was appointed as receiver of a failed bank and sought to recover the balance owed on promissory notes signed by 41 makers. The RTC sought to prevent the makers from asserting defenses, relying on the D’Oench, Duhme doctrine, and filed a motion for summary judgment. This court held, however, that the makers were not barred as a matter of law from asserting defenses because those very defenses were based on written agreements executed by the makers that were integral to the loan transaction at tissue. The issue, this court found, was whether those written agreements were in the bank’s file at the time the RTC took it over.
The central difference in this case and the Albuquerque case is that there is no writing in this case documenting defendants’ claims. In Albuquerque, the defenses were based on the explicit terms of written agreements. Here, there is no written document’ outlining the terms of the stock sale, and at best, the note and the bank stock purchase are only indirectly linked. With this central difference in mind, we examine the defenses asserted at trial.
First, the lack of consideration defense is based on Bobby’s insistence that he *187 thought he was purchasing bank stock, when in fact he learned he purchased stock in a bank holding company. He also claims he never received the stock. Kim asserts that there was no consideration for her signature on the loan. However, it is established that the D’Oench, Duhme doctrine bars the defense of lack of consideration where the federal receiver has no knowledge of such a claim. Federal Deposit Insurance Corporation v. Bernstein, 944 F.2d at 108. There is nothing in the record to indicate that the FDIC should have been aware of this defense, and we find that the D’Oench, Duhme doctrine bars the consideration defense. Furthermore, defendants failed to offer any evidence supporting their claim of lack of consideration for the stock, and this defense, even if not barred by the doctrine, was not proved at trial.
The defenses of misrepresentation and fraud also fall within the reach of the D’Oench, Duhme bar. It is settled that to overcome the doctrine, a maker must offer evidence constituting fraud in the factum, which occurs only when a misrepresentation goes to the essential character of the document, such as when a party is tricked into signing an instrument without knowledge of its true nature or contents. Northeast Community Development Group v. F.D.I.C., 948 F.Supp. 1140, 1151 (D.N.H.1995); Metropolitan Bank & Trust Company v. Prestridge, 551 So.2d 743, 745 (La.App. 1st Cir.1989), writ denied, 556 So.2d 35 (La.1990). There was no evidence offered at trial to establish the defense of fraud in the factum, and therefore, defendants’ defenses of misrepresentation and fraud are barred by D’Oench, Duhme.
^Defendants also seek to rely on the “no asset” exception to the application of D’Oench, Duhme. According to this exception, a maker is not barred from asserting a “real defense” that renders an instrument entirely void, because asserting such a defense would not defeat the FDIC’s interest in the note as it would have not had an interest to start with. Albuquerque Federal Savings & Loan v. Deville, 615 So.2d at 1008; Federal Deposit Insurance Corporation v. McFarland, 33 F.3d 532, 537 (5th Cir.1994). However, a bank holding a voidable note can transfer a voidable title to the FDIC, thereby precluding the application of the “no asset” exception.
Defendants failed to establish this exception to the D’Oench, Duhme because even if there was a violation of the federal securities law, such would not render the note void ab intitio. Defendants’ “no asset” exception is based on 12 U.S.C. § 83, which states with some exceptions that no banking association shall make any loan on the security of the shares of its own capital stock, nor shall it be the purchaser or holder of any such shares. Federal case law has established that a stock sale entered into in violation of this provision does not render the stock sale void. See Chemical National Bank of Chicago v. City Bank of Portage, 160 U.S. 646, 16 S.Ct. 417, 40 L.Ed. 568 (1896); Barron v. McKinnon, 196 F. 933 (1st Cir.1912); Dorsey v. Reconstruction Finance Corporation, 96 F.Supp. 31 (N.D.Ill.1951)(stating that there'is nothing in 12 U.S.C. § 83 that would prohibit a bank from retaining possession of its own stock until the purchaser paid the note executed for the purchase of the stock.). Therefore, we conclude that defendants may not assert a violation of the securities law against Cadle.
Finally, defendants urged the defense of duress based on Bobby’s claim that he only agreed to purchase the stock because he was told by the bank’s official that if he did not, his loans would be called by the bank, and Kim’s claim that she only signed the note in order to prevent the bank from calling in Bobby’s loans. We conclude these secret claims surrounding the purchase of the stock and Kim’s signature on the loan are barred by the D’Oench, Duhme doctrine.
^CONCLUSION
For the above reasons, we hold that the trial judge erred as a matter of law in upholding defendants’ defenses to payment of the note and dismissing the suit. We reverse the judgment and render judgment in favor of plaintiff on the note as prayed for in plaintiffs original petition. We remand the case to the trial court for the sole purpose of *188 conducting an evidentiary hearing to determine the amount of interest accruing since the filing of the petition and to determine the amount of attorney’s fees. Costs of this appeal are assessed to Defendants.
REVERSED AND REMANDED.